# Robinson's Trust.

*Corporations — Dividends — Scrip dividends — Dividend certificates — Principal and income—Life tenant—Remainder-man.*

Where a corporation expends a portion of its income applicable to dividends, in the purchase of real estate and in permanent improvements, and subsequently issues to its stockholders obligations designated as dividend obligations, equal to the amount spent on real estate and improvements, such obligations are scrip dividends; and as such are the property of a life tenant rather than the remainder-man, under a deed of trust which directed that all dividends on the stock described in the deed, whether in money or scrip of any description, were to go to the life tenant.

Argued March 26, 1907. Appeal, No. 98, Jan. T., 1907, by Hamilton M. Barksdale, Executor of the will of Susan Macfarland, deceased, from order of C. P. No. 1, Phila. Co., March T., 1897, No. 1,232, dismissing exceptions to auditor's report In re Trust Created by Moncure Robinson by deed of trust dated February 21, 1881. Before Mitchell, C. J., Fell, Mestrezat, Potter and Stewart, JJ. Reversed.

Exceptions to report of Henry G. Swayne, Esq., auditor.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to auditor's report.

*John Cadwalader, Jr.,* for appellant.—The whole question involved is to determine the intention of the donor of the trust: Cook on Corporations, sec. 557.

There can be no question that the dividend obligations which had been made out of profits previously earned were scrip dividends: Wiltbank's App., 64 Pa. 256; Eisner's Est., 175 Pa. 143.

It is submitted, therefore, that the words " dividends whether in money or scrip of any description " are used by the donor to cover every possible kind of scrip dividend that might be issued and that they do in fact exactly describe and include the present " dividend obligations."

The finding of the auditor is based almost entirely on the line of Pennsylvania cases beginning with Earp's App., 28 Pa. 368, and coming down to Kemble's Est., 201 Pa. 523, in which this court has adopted certain rules for determining what constitutes income and what principal in contests between life tenants and remainder-men. The cases have very little, if any, application to the present one, owing to the fact that not one of them turned on the language of the deed or will.

The issue of the new stock had in this case caused no serious diminution in the value of the old stock : Moss's App., 83 Pa. 264; Lowry v. Farmers' Loan & Trust Co., 172 N. Y. 137 (64 N. E. Repr. 796).

*Henry C. Boyer*, for appellees.—The obligations belonged to the remainder-man : Earp's App., 28 Pa. 368 ; Wiltbank's App., 64 Pa. 256 ; Vinton's App., 99 Pa. 434; Eisner's Est., 175 Pa. 143 ; Biddle's App., 99 Pa. 278 ; Connolly's Est., 198 Pa. 137; Gibbons v. Mahon, 136 U. S. 549 (10 Sup. Ct. Repr. 1057).                    \

OPINION BY MR. JUSTICE POTTER, June 4, 1907 :

The question presented for determination by this appeal is whether certain so-called dividend obligations, issued by the Richmond, Fredericksburg and Potomac Railroad Company to its stockholders, were in fact " dividends " upon the capital stock, and as such to be properly awarded to the life tenant ; or whether they in reality constituted a division of the capital, which should properly go to those entitled to take in remainder.

On February 21, 1881, Moncure Robinson, Sr., a resident of Philadelphia, executed a deed of trust, under which he assigned to his son, Moncure Robinson, Jr., in trust for Susan McFarland, twenty shares of the common stock of the Richmond, Fredericksburg and Potomac Railroad Company " to receive any dividends which may be made on the shares of stock above mentioned, whether in money or scrip of any description, and pay over, or transfer the same, to the said Susan McFarland, for the term of five years, from this date, at the expiration of which period, he is authorized to transfer the said shares of stock, on the books of the said company, to the said Susan McFarland, if in his opinion it should be advisable for him in the

interest of the said Susan McFarland to do so. If at the expiration of the said term of five years, it should seem to him in the interest of the said Susan McFarland, not advisable to transfer the said shares to her, he is then authorized to hold the same under this trust, such longer period as he may deem it best for the interest of the said Susan McFarland, to do so.

"In the event of the said Susan McFarland dying without children, the shares hereby conveyed are to be retransferred to the said Moncure Robinson (the signer of this instrument) in fee simple or absolute property, if he be then living, or if he be not living, to his widow, Mrs. Charlotte R. Robinson, or if neither be living, to their personal representatives."

Some nine months after the creation of this trust, the railroad company issued what were known as dividend obligations, to an amount equal to seventy per cent of the par value of the common stock of the company; and of these obligations $1,400 in par value came into the hands of Moncure Robinson, Jr., as trustee for Susan McFarland. Upon these dividend obligations a dividend of like amount to that payable on the common stock of said company was payable. The income of the twenty shares of common stock aforesaid and the dividends upon the dividend obligations were paid to Susan McFarland, the cestui que trust, during the period of five years provided for in the trust deed. In the exercise of his discretion, the trustee elected not to transfer the stock absolutely to Susan McFarland, and the trust was continued until her death on September 10, 1905.

Moncure Robinson, Jr., died December 13, 1896, and the court, under the petition of Susan McFarland, substituted Charles Chauncey, Esq., the present trustee. Moncure Robinson, Sr., lived more than twenty years after the creation of the trust, and died November 10, 1901; and his widow died August 17, 1905. Under the instrument creating the trust, "the said shares" go to "the personal representatives" of Moncure Robinson, Sr., and Charlotte R. Robinson, his wife.

The account of the trustee as filed, showed a balance of cash for distribution realized from the sale of the securities which formed the corpus of the estate, and in addition he reported the dividend obligations, which have been held intact,

amounting to $1,400 par value. The account was referred for audit and distribution to Henry G. Swayne, Esq., and he concluded that the facts of the case brought it within the rule which has often been applied to trusts created by will, under which undivided profits, as between life tenant and remainderman, are apportioned as of the date when the trust begins. He therefore awarded the proceeds of the dividend obligations, less a small amount accruing after the trust began, to the persons entitled to take in remainder under the deed. The court below dismissed exceptions to the ruling of the auditor, and confirmed his report. This appeal is by the executor of the life tenant. It appeared from the testimony before the auditor, that the settlor, Moncure Robinson, Sr., was a large stockholder in the railroad company at the time the trust was created; and it is argued by counsel for the appellant that he was presumably familiar with the company's condition and the probability that in the near future there would be a distribution of the undivided profits, by means of these dividend obligations. Under the language of the trust deed, all dividends on the stock, whether in money or scrip of any description, were to go to the life tenant.

The so-called dividend obligations were issued in pursuance of a resolution by the board of directors reciting that the net profits, which might have been paid to the holders of the common stock, had been appropriated during several years to the purchase of real estate and in making permanent improvements, and for the purpose of dividing among the common stockholders the amount thus withheld, these dividend obligations, or dividend certificates, were issued, which entitled the holder to receive an amount equal to the dividend paid upon the same number of shares of common stock, and also to share in a corresponding proportion in any division of the assets of the company. If these profits had been paid out from year to year, to the common stockholders, as they might confessedly have been, no one would have suggested that they constituted a division of the capital stock. What difference did it make that having been allowed to accumulate during a series of years, they were finally distributed by means of these certificates in a lump sum? The fund had been created by the net earnings of the corporation and it was held as part of the

general assets, until in the judgment of the directors the time came when it was proper to distribute it among the stockholders from whom it had been withheld. The capital of the company was not diminished by this action; the method employed was simply a mode of distributing the profits earned by the employment of the capital during an extended period, and which had in the meantime been used in the purchase of real estate and in permanent improvements.

The certificates were clearly scrip dividends. "A scrip dividend is a dividend of certificates giving the holder certain rights which are specified in the certificate itself. These dividends are usually declared when the company has profits which are not in the shape of money, but are in other forms of property, and the company wishes to anticipate the time when the property may be sold for cash, and the cash distributed by a money dividend. . . . Sometimes the certificate so far partakes of the character of a certificate of stock as to entitle the holder to dividends:" Cook on Corporations, sec. 535. See also note to same, as follows: "A dividend of scrip—i. e., a paper entitling the holder to dividends equal to dividends thereafter declared on the capital stock—is practically a stock dividend, except that the scrip cannot vote, and provision is generally made for taking it up in some manner. Such a dividend was involved in Gordon v. Richmond, etc., R. R. Co., 78 Va. 501." That case related to the identical "dividend obligations" which are now in question here.

"Dividends whether declared in cash, in scrip, or in new shares, are presumptively dividends of profits, since a corporation has no power to make a dividend of its capital stock except in liquidation. We may conclude, therefore, on principle that presumptively every dividend, whether in cash, in scrip, or in new shares, goes to him who was the beneficial holder of the shares at the time when it was declared. This will carry every dividend presumptively to the life tenant instead of to the remainder-man:" Thompson on Corporations, sec. 2193. It is true that the presumption often yields upon inquiry into the real substance of the transaction, but in the present case such inquiry shows no reason why the presumption should yield. Of course the payment of any dividend by a corporation in active operation, takes away a portion of the

assets which have been temporarily increased by the earnings, and just to that extent the value of the shares in the market may be lessened. But that fact is of no relevancy in determining the question of whether the dividend is to be regarded as income, to the life tenant, or as capital for the reminderman. That question is to be determined by the origin of the fund from which the dividend is paid: Lowry v. Farmers' Loan & Trust Co., 172 N. Y. 137. It is admitted that the fund here for distribution was made up of net earnings or profits, which were avowedly disbursed as such by the directors of the company, in the form of scrip dividends. They are therefore properly to be regarded as income, and not as capital.

The trust in this case was created by deed, to take effect at once, and was not postponed, as where a trust is created by will, to take effect only upon the death of the testator, it may be years afterwards. But aside from this, it is safe to say that in every case the intention of the settlor of the trust, so far as it can be ascertained, must control. "The intent of the grantor, or testator, is the pole-star, and will be carried out by the courts:" Cook on Corporations, sec. 557. The intent of the grantor here, which he plainly expressed, was that all dividends declared upon the stock in question, of whatever nature, were to go to Susan McFarland. If declared in cash, they were, in the language of the deed, to be "paid" over. If in scrip of any description, they were to be "transferred." Our consideration of the instrument creating the trust leads us to the conclusion that the term "scrip of any description" used therein includes the so-called "dividend obligations," and that the intention of the grantor was that they should go to the life tenant.

The judgment of the court below is reversed, and the record is remitted that distribution may be made in accordance with this opinion.