# Boyer's Appeal.

*Trusts and trustees—Life tenant and remainder-man—Dividends on stock—Earnings.*

1. As between life tenant and remainder-man presumptively every dividend goes to the life tenant.

2. Under a deed of trust in which the settlor transfers to trustees stock of two corporations with power in their discretion at any time to sell and reinvest the proceeds, and with power to pay over the "dividends, income and profits," thereof to the tenant for life, and after her death to convey the estate absolutely to her children, "dividend obligations" of one company and "certificates of indebtedness" of the other company, issued to stockholders and representing moneys which were deemed to have been appropriated by the two companies out of current earnings

to pay for improvements and additions, are to be distributed to the tenant for life, in the absence of any evidence whatever that the issue of the dividend obligation, or the certificates of indebtedness lessened the value of the stock below what it was at the time of the creation of the trust.

3. In such a case the burden is upon the remainder-man to show that the issue of the obligations and certificates decreased the value of the stock below what it was worth at the date of the execution of the deed of trust. Whether there has been a decrease in the value of the stock between the date of the creation of the trust, and the date of the obligations and certificates is not to be ascertained by deducting the aggregate credits of the profit and loss account at one of the periods from the aggregate credits of the same account at the other period, inasmuch as the amounts expended out of earnings for permanent improvements would have to be charged against earnings, and would leave that much less to go to the credit of the profit and loss account at the later period.

Argued Jan. 5, 1909. Appeal, No. 165, Jan. T., 1908, by Nathalie C. Boyer, from order of C. P. No. 3, Phila. Co., March Term, 1881, No. 443, dismissing exceptions to auditor's report in estate of Nathalie C. Robinson. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Exceptions to report of Frank R. Shattuck, Esq., auditor. The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Henry C. Boyer,* for appellant.—The $13,020 dividend obligations of the Richmond, Fredericksburg and Potomac Railroad Company and the $7,800 certificates of indebtedness of the Seaboard and Roanoke Railroad Company are both dividends, and belong to the life tenant without apportionment: Robinson's Trust, 218 Pa. 481; Vinton's App., 99 Pa. 434.

*William Early Rhein* and *Charles Chauncey,* for appellees.— The dividend obligations of the Richmond, Fredericksburg and Potomac Railroad Company and the certificates of indebtedness of the Seaboard and Roanoke Railroad Company

were properly apportioned between life tenant and remainder-men in accordance with the Pennsylvania rule: Earp's App., 28 Pa. 368; Wiltbank's App., 64 Pa. 256; Moss's App., 83 Pa. 264; Biddle's App., 99 Pa. 278; Vinton's App., 99 Pa. 434; Phila. Trust Co.'s App., 24 W. N. C. 137; Oliver's Est., 136 Pa. 43; Smith's Est., 140 Pa. 344; Park's Est., 173 Pa. 190; Connolly's Est., 198 Pa. 137.

Opinion by Mr. Justice Potter, March 22, 1909:

On November 19, 1869, Moncure Robinson, the father of Mrs. Nathalie C. Boyer, the appellant in this case, executed a deed of trust under which he transferred to the trustees sixty-two shares of the capital stock of the Richmond, Fredericksburg and Potomac Railroad Company, and 150 shares of the capital stock of the Seaboard and Roanoke Railroad Company. Under the provisions of the deed of trust, the dividends, income and profits of the stock were to be collected and paid over to the appellant, the daughter of the donor, during her natural life, and after her death, the said stocks were to be transferred absolutely to her children.

Afterwards, under the same conditions as contained in the original deed of trust, additional shares of stock were transferred to the same trustees, which increased the holdings in the Richmond, Fredericksburg and Potomac Railroad, to 186 shares, and in the Seaboard and Roanoke Railroad Company to 156 shares. Under date of November 16, 1881, the board of directors of the Richmond, Fredericksburg and Potomac Railroad Company recommended the adoption by the stockholders of the following resolutions:

"Resolved. That for the purpose of dividing among the common stockholders of the company the amount standing upon its books to the credit of profit and loss, which amount has been heretofore earned by the company and expended in permanent additions to and improvements of the company's property, instead of being used in the payment of dividends, the board of directors be, and they hereby are, authorized in their discretion, to issue dividend obligations or certificates in amounts of $100, or multiples of that amount, bearing, in lieu

of interest on each $100 of the certificates, the dividend payable on each share of the common stock of the company at the several dates when such dividends shall be payable, and entitled in any division of the assets of the company to share in a corresponding proportion of the same.

"For the fractional part of $100, to which any stockholder may be entitled, there shall be issued to him a certificate of dividend scrip, which certificates may be converted at the option of the holder into dividend obligations when presented in sums of $100, but which shall not be entitled to interest or a share of the dividends until so converted.

"Respectfully referring the stockholders to the accompanying reports of the examining committee and of the general superintendent and to the statements of the treasurer for details, this report is submitted.

"By order of the Board of Directors.

"J. P. BRINTON,

"President."

These resolutions were duly adopted at a stockholders' meeting held the same day, and the board of directors under date of January 1, 1882, duly issued the so-called dividend obligations, as therein described, to an amount equal to seven-tenths of the common stock then outstanding. Upon the 186 shares of the stock of this company held by the trustees, they received dividend obligations of the par value of $13,020.

Upon May 4, 1886, the stockholders of the Seaboard and Roanoke Railroad Company adopted the following resolutions:

"Whereas, for a series of years, surplus earnings of the company, which could have been legitimately divided among the holders of its stock and dividend obligations in addition to the amounts actually divided among them, have been used by the company for the purpose of replacing wooden bridges by stone and iron structures; for improving the character of the roadway; for the building of freight and passenger houses; for the purchase and construction of wharves and terminal facilities; for relaying the road with steel rails; for the purchase and construction of machinery and cars, and for the acquisition

of other property, and it is due to the holders of the stock and dividend obligations of the Company, that they should receive evidence of the expenditure and investment of said surplus earnings from time to time according to the convenience of said Company and its ability to pay interest upon such evidence, and

"Whereas, the present actual value of the investment of such surplus earnings has been estimated by the Directors of the Company and the value thereof in the judgment of the said Directors is not less than the amount of the par value of the entire capital stock, guaranteed and common, and the dividend obligations of the Company; now, theretofore,

"Resolved. That certificates in amounts of one hundred dollars, or multiplies of that amount, signed by the President and Treasurer of the Company, be issued to the several holders of its stock, guaranteed and common, and its dividend obligations, in sums of money equal in amount to the sum of fifty dollars for each share of the capital stock, guaranteed or common, held by the stockholders respectively, and in sums of money equal in amount to the sum of fifty dollars for each one hundred dollars of dividend obligations held by the respective holders of dividend obligations; the said certificates to be payable on or at any time after the first day of August, nineteen hundred and sixteen, at the pleasure of the Company, in full or in installments of ten per cent of the face value of such certificate, with interest at the rate of six per cent per annum, to be computed from the first day of August, 1886, payable in equal semi-annual installments as the same shall accrue on the first days of February and August in each year until the principal sum named in each and every one of such certificates shall be fully paid. Such certificates to be issued to the holders of stock (guaranteed and common) and of dividend obligations of record at the office of the Company at the time of the passage of this resolution, to wit: the·fourth day of May, 1886, except as hereinafter provided."

The resolutions further provided for the payment of fractional interest in cash, and exchange of bonds if subsequently issued by the Company, and a form of certificate as follows:

"UNITED STATES OF AMERICA

"STATES OF VIRGINIA AND NORTH CAROLINA

"SEABOARD AND ROANOKE RAILROAD COMPANY

"CERTIFICATES OF INDEBTEDNESS AUTHORIZED BY RESOLU-
TIONS OF THE STOCKHOLDERS, PASSED MAY 4TH, 1886.

"This is to certify, That the Seaboard and Roanoke Railroad Company for value received, is indebted to ———— in the sum of ———— dollars payable on or at any time after the first day of August, in the year one thousand nine hundred and sixteen, at the pleasure of the company in full or in installments of ten per cent or in multiples thereof, with interest at the rate of six per cent per annum to be computed from the first day of August, 1886, payable in equal semi-annual installments as the same shall accrue on the first days of February and August of each year until the principal sum is paid.

"If at any time the Company shall authorize an issue of bonds or other form of indebtedness secured by a deed of trust or mortgage subordinate to the mortgage to secure an issue of bonds of the aggregate amount of two million five hundred thousand dollars authorized by the resolution of its stockholders of May 4th, 1886, then and in such case there shall be reserved by the Company out of said issue of bonds or other form of indebtedness secured by said subordinate mortgage an amount thereof sufficient to pay or provide for said certificates at their maturity or to retire the same prior to their maturity by exchange by mutual agreement.

"This certificate is registered and is transferable only upon the books of the Company in person or by attorney for a certificate or certificates of the same aggregate amount, provided that each certificate shall be for one hundred dollars or a multiple of one hundred dollars.

"In Witness Whereof, etc."

Action was duly taken by the board of directors, and the officers of the company, and on August 1, 1886, certificates of indebtedness in the form set forth, were issued. It should be noticed that these certificates did not in any way purport to be for stock, nor were they similar to the so-called dividend obligations issued by the other company. They were straight

out acknowledgments of indebtedness. Upon the 156 shares of this company's stock held by the trustees, they received certificates of indebtedness to the amount of $7,800.

The auditor, and the court below, regarded these dividend obligations and these certificates of indebtedness as stock dividends, and apportioned them between the life tenant and those in remainder, upon the theory that they represented a distribution in part of profits earned by the companies, prior to the creation of the trust. In making the apportionment, the auditor simply compared the amount standing upon the books of the respective corporations to the credit of profit and loss, at the date of the creation of the trust, with that standing to the credit of the same account, at the date of the issue of the dividend obligations, and the certificates of indebtedness. The difference he regarded as the earnings of the companies, after the creation of the trust. He apparently made no attempt to ascertain the real value of the stocks at the time when the life tenancy was created. Nor did he ascertain whether after the issue of the dividend obligations by the one company, and the certificates of indebtedness by the other, the value of the stock in the respective companies was less than it was when the trust estate was created. The doctrine which the auditor attempted to apply, is that which undertakes to give the bonus to the remainder-man or to the life tenant, in accordance with the fact as to whether the bonus was earned before or after the creation of the trust; or if part was earned before and part after, then to divide the bonus between the remainder-man and the life tenant in the proportion which the amount accumulated before the creation of the trust may bear to that accumulated thereafter. This is the doctrine of Smith's Estate, 140 Pa. 344, following and restating that of Earp's Appeal, 28 Pa. 368. But under that rule, as stated in substance in 9 Am. & Eng. Ency. of Law (2d ed.), 715, as the Pensylvania rule, "the result is arrived at, by ascertaining what the value of the stock was when the life tenancy was created. After the issue of bonus its value is again determined. If it is less than it was at first, just to that extent is it held that the capital has been impaired, and the trustee must apply to the corpus of the estate

enough of the bonus to make the capital equal to what it was when the trust was created. If on the other hand the stock is found to be as valuable as when the trust was created, or of greater value, the capital has not been decreased, and the bonus goes in whole to the life tenant." In other words, it seems to be the doctrine of our cases, that the remainder-men are entitled to just what the stock was actually worth at the time of the creation of the trust, no less and no more. It may be suggested that this method makes no allowance to the remainder-men for such increase in value as may be due to an enlarged earning power of the corporation, or to an increased value of the franchise. But probably no rule could be framed which would work exact justice in all cases. At any rate, the method by which the auditor in the present case undertook to apply the rule was entirely inadequate to produce the right result, for the reason that he confined his calculation merely to the gross amounts standing at the different periods, to the credit of the profit and loss accounts. This would not afford any real index to the value of the stock; and yet that was the thing to be ascertained; the value at the time the trust was created, as compared with the value after the distribution of the bonus. Profit and loss is a resultant account, usually made up from the balances transferred from other accounts, and it must, from its nature, depend entirely upon the elements entering into those other accounts. For instance, in the present case, it appears from the resolutions authorizing the issue of the so-called dividend obligations, and the certificates of indebtedness, that for some years prior thereto, the earnings of the companies which might have been paid out in dividends to the stockholders, from year to year, had been expended in permanent additions to, and improvements of, the properties. Manifestly all such expenditures would be for the benefit of the remainder-men, and would be a taking of that which would otherwise have gone to the life tenant, in dividends. The amounts expended in this way would have to be charged against the earnings, and would leave that much less to go to the credit of the profit and loss account. So that it is plain that the latter account, as it stood upon the books, would not

represent the total earnings of the corporation. No man can ascertain his business worth from his profit and loss account alone; in order to learn that, there must be shown a statement of his assets and liabilities, and an inventory of his property. This court said in Smith's Estate, 140 Pa. 344: "It is the intrinsic value of the shares, to be ascertained from the amount and value of the assets (of the corporation) at the death of the testator, and at the time of the increase of the stock, which governs in the apportionment of the surplus profits. The market value may aid in the ascertainment of the actual value, and is therefore properly received in evidence on that issue." Citing Earp's Appeal, 28 Pa. 368, and Moss's Appeal, 83 Pa. 264. In the case now before us, the auditor apparently took no account of either actual value or market value of the stocks in question at any time, and therefore he missed the real point of the inquiry. Presumptively every dividend goes to the beneficial holder of the shares at the time it is declared. This will carry every dividend presumptively to the life tenant instead of to the remainder-man: Thompson on Corporations, sec. 2193.

In the present case, the burden was upon those who claim in remainder, to show that the issue of the dividend obligations in 1881 decreased the value of the stock of the Richmond, Fredericksburg and Potomac Railroad Company, below what it was worth in 1869, when the trust was created, and failing to do this, the whole of the bonus or dividend would, under the operation of the Pennsylvania rule, go to the life tenant. The same is true with respect to the certificates of indebtedness issued by the Seaboard and Roanoke Railroad Company. A very persuasive circumstance in the transactions is the fact that the dividend obligations and certificates of indebtedness were avowedly issued to make good to the shareholders the earnings which from year to year, instead of being distributed as dividends, had been applied to the permanent improvement and betterment of the properties. These dividends from earnings made after the creation of the trust, would clearly have gone to the life tenant. For some twelve years in one case, and seventeen in the other, she was thus deprived of her divi-

dends, and the earnings out of which they might have been paid went by way of improvements and additions to the property, to the benefit of the remainder-men. Was she not then fairly entitled to the obligations issued by the companies, avowedly in lieu of the dividends of which she had thus been deprived? It seems so, to us. And then after all, the rule for the determination of controversies over dividends, between life tenants and remainder-men, should be to give to each just what the donor intended each to have. As has been said, the intent of the grantor or testator is the pole star for the guidance of the courts.

The intent of the grantor here, was that the "dividends, income and profits" from the stock in trust were to go to the life tenant. These terms are not necessarily coextensive or identical. It is to be presumed that the settlor meant to indicate by the use of these three words, "dividends," "income" and "profits," pretty much everything in the way of advantage or benefit which might accrue from the stock, without decreasing the original value of the capital which it represented. We think the terms were broad enough to include the "dividend obligations" issued by the Richmond, Fredericksburg and Potomac Railroad Company, and the "certificates of indebtedness" issued by the Seaboard and Roanoke Railroad Company; the latter were not stock obligations, but were acknowledgments of indebtedness to the stockholders for the funds which it was considered fairly belonged to them as current earnings, but which had been appropriated to pay for improvements and additions. Mr. Robinson, the settlor, appears to have been thoroughly familiar with the conditions and management of the corporations in question, and he doubtless intended to cover whatever form the distribution of gains arising from the stock might take, when he provided that the life tenant should receive the "dividends, income and profits" of the stocks which he placed in trust. We see no evidence in this case that the issue of the dividend obligations, or the certificates of indebtedness, lessened the value of the stock below what it was at the time of the creation of the trust. That being so, there was no reason why the whole of the bonus, whether it be con-

sidered as "dividends," "income" or "profits" should not go to the life tenant. We are of the opinion that the auditor and the court below erred in making any apportionment.

The assignments of error are sustained, and the judgment of the court below, affirming the report of the auditor, is reversed.

And it is now adjudged and decreed, that under the terms of this trust, the entire amount of $13,020 of dividend obligations issued by the Richmond, Fredericksburg and Potomac Railroad Company, and the entire amount of $7,800 of certificates of indebtedness issued by the Seaboard and Roanoke Railroad Company, were due and payable to the life tenant as dividends, income or profits upon the shares of stock held in trust; and the proceeds thereof are hereby awarded to the appellant, as said life tenant.