# Flaccus's Estate.

*Corporations—Dividends—Stock dividends.*

1. A stock dividend simply converts a part of the surplus of the company into stock; it does not increase the value of the total stockholdings of one who has been awarded and received the dividend.

*Wills—Payment of debts—Source of payment—Trust and trustees—Residuary estate.*

2. When a will directs payment of testator's debts, and then places the residue of the estate in trust, the primary source for their payment continues to be the corpus of the estate, even though the trust provisions also direct their payment.

3. Where payments are directed to be made from the corpus of a trust estate, they must primarily be paid out of that part of the trust which is given to the residuary legatees named therein, and not from the bequests, which are to be paid before the residuary legatees receive anything.

*Trusts and trustees—Corpus—Stock dividends—Principal and income—Legacies, specific, demonstrative, or general—Wills.*

4. Extraordinary stock dividends, declared and paid on stock held in trust,—whether they be of cash, scrip or stock,—if they exceed the profits earned after the beginning of the trust, must be apportioned by giving to the corpus sufficient to keep intact the value of the shares, as they were at the time the trust began, and by giving the rest of the dividend to those entitled to the income of the estate.

5. The rule is applicable whether the donor's gift of the stock would ordinarily be called specific, demonstrative or general; the distribution of an extraordinary stock dividend will be made in accordance with the rule, whenever the facts are as stated in it.

Argued March 19, 1925. Appeals, Nos. 45-9, 51-3, March T., 1925, by Ida Flaccus Evans et al., from decree of O. C. Allegheny Co., Sept. T., 1923, No. 569, dismissing exceptions to adjudication in estate of Charles L. Flaccus, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Exceptions to adjudication of MILLER, P. J.
The opinion of the Supreme Court states the facts.
Exceptions dismissed in opinion by MILLER, P. J.
Ida Flaccus Evans et al., testamentary guardians and trustees, appealed.

*Error assigned* was, inter alia, decree, quoting record.

*William Watson Smith,* of *Gordon, Smith, Buchanan & Scott,* with him *H. Fred Mercer* and *John E. Winner,* for appellants.—The grandchildren are entitled to the entire stock dividend: Blackstone v. Blackstone, 3 Watts 335; Cuthbert v. Cuthbert, 3 Yeates 486; Ludlam's Est., 13 Pa. 188; Fidelity Co.'s App., 108 Pa. 492; Johnson's Est., 170 Pa. 177; Ferreck's Est., 241 Pa. 340; Wood's Est., 267 Pa. 462; Snyder's Est., 217 Pa. 71; Klenk's Est., 210 Pa. 575; Keate's Est., 16 Phila. 257; Eckfeldt's Est., 13 Phila. 202; Gibbons v. Mahon, 136 U. S. 549; Eiser v. Macomber, 252 U. S. 189; Towne v. Eisner, 245 U. S. 418.

In any event, the granchildren are entitled to stock to the extent of the value of the respective bequests at testator's death: Earp's App., 28 Pa. 368; Waterman's Est., 279 Pa. 491.

*John M. Freeman,* with him *F. R. Harbison* and *Albert C. Hirsch,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, April 13, 1925:
The will of Charles L. Flaccus, deceased, directs "that all my just debts, my funeral expenses and expenses of

settling my estate shall be paid as soon as convenient";
that certain charitable legacies should be paid, not earlier, however, than January 1, 1921, unless his executors
and trustees "deem it wise to anticipate the payment"
of any or all of them; that $10,000 be given to each of
his son's wives; that his own wife shall have a life estate
in his city and country homes and an absolute estate in
the personal property thereat; and then disposes of his
residuary estate as follows:

"19th: I give devise and bequeath my stocks, bonds
and other securities, and all the rest, residue and remainder of my property and estate, real, personal and
mixed, of whatsoever character and wheresoever situated, unto my executors and trustees hereinafter named,
their survivors, survivor and successors, in trust nevertheless for the uses and purposes hereinafter set forth;
said trustees shall collect and receive all rents, income
and increase; they shall handle the property, real and
personal, as they may deem in their discretion for the
best advantage, and they shall care for and manage
the same as though they were the beneficial owners thereof; out of the income from said property thus put in
trust my wife shall be entitled to receive for maintenance
and other current expenses, for and during the term of
her natural life, such sums per annum as she shall deem
proper, and my debts and liabilities of whatever character
shall be paid off as soon as convenient; said trust shall
continue during the term of my wife's natural life, and
shall not in any event end before January 1, 1921. Between the time of my decease and said date of January
1, 1921, said trustees, or the majority of them, may pay,
if it is deemed best, a sum not exceeding $15,000 to each
of my said three children, Ida May, Leonard and Charles.
If any of my said children shall die before the dissolution of said trust, leaving issue then living, or if either
of my sons shall die before the ending of said trust, leaving a surviving widow, with or without issue, such issue,
or such surviving widow and issue, or such surviving

widow without issue, shall be entitled to receive out of the income from such trust property, the sum of $5,000 per year, in quarterly installments, until the dissolution or ending of said trust; provided, however, that upon remarriage of such widow, her interest in such quarterly instalments or payments, or, in the case of a widow without issue, the payments themselves, shall at once cease and determine. During the pendency of said trust there shall be no vested interest in the assets included in said trust.

"20th: Immediately after January 1st 1921, each one of my children and each one of my grandchildren who shall then be living shall receive a portion of my stock in Diamond Alkali Company and in the said C. L. Flaccus Glass Company. If they shall then respectively survive, my daughter Ida May and my sons Leonard and Charles shall each then receive 200 shares of stock in said C. L. Flaccus Glass Company and 100 shares of stock in said Diamond Alkali Company; my granddaughter Margaret Gray Evans shall receive 100 shares of stock in said Diamond Alkali Company and 50 shares of stock in said C. L. Flaccus Glass Company, and...... [my other grandchildren named], and any other grandchildren which I may have living at the time of such distribution of stock, shall also receive 50 shares in said Diamond Alkali Company and 50 shares in said C. L. Flaccus Glass Company.

"21st: Immediately after January 1st 1921, if my wife shall have died meantime, and if not, then immediately after her decease, the said trust in the hands of my executors and trustees shall be dissolved, the real estate and the personal assets shall be freed from the trust, except so far as needed to make formal transfers, etc., and the land and other assets shall be owned by the parties beneficially interested, in proportion and manner as hereinafter set forth. The actual division and distribution, and the formal transfers of title etc. shall take place at any time thereafter, when the parties in interest,

or the majority in value, shall so elect.  Each of my said three children, Ida May, Leonard and Charles, if living at the time of the dissolution of the said trust, shall receive one-third of the lands, stocks, bonds and other assets, in fee and absolutely; if at that time any of my children shall have deceased, leaving issue then surviving, such issue shall take the place and receive the share intended for the deceased parent, subject as hereinafter set forth.  If either of my sons shall have deceased prior to the dissolution of said trust, leaving a wife surviving, but no issue living at the time of said dissolution, such wife surviving to the time of said dissolution, shall receive the sum of $10,000.  If either of my sons shall have deceased prior to the dissolution of said trust, leaving issue and a wife both surviving at the time of said dissolution, such surviving wife shall receive out of the share of her child or children, an annuity or payment of $5,000 per year, in quarterly instalments, so long as she shall live and continue unmarried.

"Upon the remarriage of such widow, the quarterly instalments or payments shall at once cease.  If any of my children shall be deceased at the time of said dissolution, not having left a child who shall have survived to the time of said dissolution of the trust, then, subject to the said payment to a surviving wife, the entire property shall pass and go to the survivors or survivor of my children, or to a survivor and the issue of a deceased child, as the case may be, that there may occur no intestacy."

The widow and the three children were named (and later appointed) as executors and trustees, and were given full power and authority, by the 22d paragraph, "to sell and convey any or all of my real estate, and any or all of the stocks, bonds or other assets held by them, during the pendency of said trust......In case of any such sale or sales, said trustees shall hold the proceeds of sale under the same trust; it being merely a change in form of the assets."

At some unstated date, the executors and trustees sold 3,000 of the 4,170 shares of the stock of the Diamond Alkali Company belonging to testator, and used the proceeds to pay his debts. Subsequently, on March 19, 1920, the widow died. On October 20, 1920, that company declared an extraordinary stock dividend of two hundred per cent, the estate thereby receiving 2,340 additional shares, and their proper distribution,—the time therefor having arrived,—raises the single question now to be decided. Appellants, who are the testamentary guardians and trustees for the grandchildren, claim a portion of those shares for their wards, while appellee, a childless son of testator, asserts that he and his sister and brother should get all of them. The court below excluded the claim of the grandchildren, and awarded all the shares to testator's children, apparently on the theory that these shares were an "increase" of the estate, during the continuance of the trust, and hence passed to the trustees under the 19th paragraph of the will; giving, as an additional reason, that, since the proceeds of the sale of the stock were used in paying debts, which should have been paid "out of income as directed by the will, this corpus [i. e. the stock dividend] which the residuary legatees [i. e. the children] were entitled to, should not be diminished by the accumulation of income, but should be awarded to them in compensation for the corpus so depleted." The reason for this latter conclusion is not made clear in the opinon, but we gather from the argument on behalf of the children, that it is based on a finding that testator intended the trust estate to be primarily liable for his debts. Whatever the reason, however, we cannot assent to either of the conclusions reached by the court below.

It is true the 19th paragraph of the will provides that the "trustees shall collect and receive all rents, income and increase" of the residuary estate. If the word "increase," as there used, means something more than "income," then appellees are not helped by the difference in

meaning, for, even if their contention as to the source from which debts were to be paid, is accepted as correct, the payment, referred to in this clause, would be "out of the *income* from said property thus put in trust," and not out of "increase." We are of opinion, that in this will, the word "increase" is synonymous with "income," for the entire paragraph provides for distribution of "income" by name, and not of "increase." It is idle to pursue this thought further, however, for the receipt of the stock dividend did not "increase" the value of the estate: Gibbons v. Mahon, 126 U. S. 549, 559; Eisner v. Macomber, 252 U. S. 189, 210. Three shares of stock, intrinsically worth $101.77 each, are no more valuable than one worth $305.31, which was the status here at the time the dividend was declared. There was, of course, owing to the "increase" of the surplus of the company, a like "increase" in the value of the 1,170 shares, between the date of testator's death and the time of declaring the stock dividend, and an ascertainment of the effect of this increase, which was included in the stock dividend, determines the question under consideration.

The vital error of the court below is in its conclusion that this trust is made the primary source for the payment of debts. In the absence of a testamentary direction to the contrary, they should be paid out of the corpus of the general estate of a testator. It is true that, as between his distributees, he may order his debts to be paid out of income; but here this has not been required. On the contrary, by the first paragraph of the will, he directs their payment "as soon as convenient," which, in that connection, necessarily means from principal; and it is only the residue of the estate, after the payment of debts, etc., which is directed to be placed in trust. This makes evident the conclusion that the words, in paragraph 19, "my debts and liabilities of whatever character shall be paid off as soon as convenient," cannot be given the meaning attributed to them

by the court below. Neither in that clause, nor elsewhere in the will, is there shown the slightest intention to abrogate its first paragraph, or to alter, even as between the classes of legatees, the statutory provision regarding the primary source of payment. In view of these facts, we can only construe the clause above quoted as a warning to the executors and trustees that they must not let the wide discretion given to them regarding the charitable bequests and the handling of the estate, or the power given the widow to require "such sums per annum as she shall deem proper," or any other extraneous provision of the will, to interfere with the payment of debts "as soon as convenient."

The same conclusion would be reached if we did not so interpret this clause of the will. If it be assumed that the words, at the beginning of the 19th paragraph, "I give, devise and bequeath my stocks, bonds, and other securities, and all the rest, residue and remainder of my property" in trust, show that testator intended all his "stocks, bonds and other securities" should form part of the trust estate, and hence could not properly be used for the payment of debts, as specified in the first paragraph; then it necessarily follows that some other of his assets than the "stocks, bonds and other securities," must be used for their payment, for they are to be paid before the rest of the estate (excluding, on this assumption, the stocks, bonds and other securities) can be carried into the trust. So, also, if it be contended that the broad powers given to the trustees, together with the direction in the 19th paragraph that his "debts and liabilities of whatever character shall be paid as soon as convenient," authorized their payment, at the discretion of the trustees, out of either the principal or income of the trust estate, then the same conclusion is reached. If they may be paid out of principal, as the trustees elected to do, the principal thus chargeable is, as in all cases, the residuary part of the trust estate, and not the bequests which were to be

paid before the residuary legatees receive anything. So, too, if the trustees had power to choose either principal or income as the source of payment of the debts, they have chosen to pay from principal, viz, the 3,000 shares of stock, left by testator; and they did this and paid the debts before the stock dividend, under consideration, was declared. In every aspect of the matter, therefore, the questions suggested regarding the debts, do not affect the real issue in the case.

Before passing on this we should notice, perhaps, two points stressed by appellee, but which we think are of no moment. At the end of the 19th paragraph it is stated that "During the pendency of said trust there shall be *no* vested interest in the assets included in said trust." Appellee contends that these words refer only to the gifts to the grandchildren, though they plainly include both classes of distributees, and the gifts to each were, by the 20th paragraph, made to depend on whether or not they were living on January 1, 1921, when the trust was to end; and by the 21st paragraph even the gift of the residue of the trust estate to the children, is made to depend on a like contingency. The matter is of no importance, however, for when the trust ended every member of each class was still living. Nor is it of consequence that the trustees, by unanimous action, were given power to sell and convey this stock. This is true as to every part of the trust estate, it being provided, however, that in any such case the "trustees shall hold the proceeds of sale under the same trusts; it being merely a change in form of the assets."

We are thus brought to the real question in the case, and appellants' contention as to it is that, in addition to the number of shares given to them by the will, they are entitled to all of the two hundred per cent dividend declared on those shares, because the gifts of the stock are specific. Assuming they are specific, it is clear nevertheless that the "income and increase" thereon, was given to the trustees for distribution as provided in the will.

This being so, it is not necessary to decide whether the legacies are specific, demonstrative or general, for in every aspect of the matter appellants could only get the stock in case they survived to January 1, 1921, and the trustees were to get the income accruing in the meantime. By the decree appealed from, as well as by the one we enter, appellants will receive the number of shares given by testator, just as effectually as if he had clearly made the gifts specific by giving to each of them stock identified by the numbers stated on the certificates he owned, and just as effectually as if he had given them a certain number of shares not specific; in either event they would not get the income accruing on those shares. The controversy is not over the particular shares given by the will, but over the "income or increase" thereof after testator's death. It is not over the name usually applied to such a gift, nor what would be its incidents if the will were silent on the subject. Here, testator has chosen to postpone appellants' possession of the stock to a specified date, and has given the accruing income to the trustees. This he had the right to do because of his absolute dominion over the stock, and hence we have the typical case of income being given to one class, the ultimate gift, at a specified date, to another, and, pending the latter, an extraordinary stock dividend, which included more than the income which had accrued after the death of the donor.

In other jurisdictions, many and varied are the methods applied in the distribution of extraordinary corporate dividends under such circumstances; but in this State we have long since abandoned the technical rules applied elsewhere, and distribute such dividends, if declared out of profits, whether they be of cash, scrip, or stock, (Smith's Est., 140 Pa. 344, 352; Stokes' Est. (No. 1), 240 Pa. 277, 280-1) according to equitable principles, allotting to corpus so much of them as is necessary to make good any reduction of actual value from that which existed at the time the trust was created, and giving

the balance to those entitled to the accruing income. From Earp's App., 28 Pa. 368, to Waterman's Est., 279 Pa. 491, we have steadily adhered to this rule, which, in principle, is as applicable to every case where one gets the corpus at a given date, and another the income pending final distribution, as it is to the ordinary case of life tenants and remaindermen. In each the same reason exists for refusing to give to the first taker the income which had accrued on the stock prior to the creation of the trust, or to the remainderman that which had accrued after its creation; and this, as stated, is true whether the gift in remainder is specific, demonstrative or general. In Waterman's Est., supra, we said (page 495), that the "equitable rule [applied in our cases] is based on the presumption that a testator or settlor intends exactly what he in effect says, namely, to give to the remaindermen, when the period for distribution arrives, all that which at the time of his decease, legally or equitably appertains to the thing specified in the devise, bequest or grant; and to the life tenants only that which is income thereon. It follows that, whether the assets in the hands of the trustees are stock, or other securities, or both, the foregoing method of distribution applies to each and all of them, since the reason of the rule is equally applicable to all of them." We now add that the technical name given to the gift, is of no more importance than the particular character of the dividend itself. "The general rule is equitable and just," and it will always be applied unless the donor has directed otherwise.

It remains, therefore, but to apply it to the facts of the instant case. Since neither the children nor grandchildren are entitled, by reason of the gifts in the 20th paragraph of the will, to any part of the income which had accrued between testator's death and January 1, 1921,—all of it being payable to the trustees, for distribution to the persons entitled to the residue of the trust estate,—it follows that, so far as concerns those

gifts, the legatees named in that paragraph are entitled to receive only so much of the stock dividend of 2,340 shares, as will make the total stock awarded to them, of equal value with the shares bequeathed, such value being estimated as of the date of testator's death. The intrinsic value of each share at that time, as shown by the certificate of the treasurer of the company, was $188.01; their value, after the stock dividend was declared and paid, was $101.77 each. Appellants are entitled, therefore, to enough of the new shares to make up the loss of $86.24 per share. Multiplying the $86.24 loss per share by the 100 shares given by the will to Margaret Gray Evans, and dividing the product by $101.77, will show she is entitled to 84¾ additional shares, or 184¾ altogether. The other grandchildren were given, by the will, 50 shares each; hence they are each entitled to 42⅜ additional shares, or 92⅜ altogether.

The decree of the court below is reversed and the record is remitted that distribution may be made in accordance with the views expressed in this opinion; the costs to be paid by the estate of testator.