## Chauncey's Estate.

Argued January 20, 1931. Before WALLING, SIMP-
SON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*John Lewis Evans,* for appellant.—So much of the
liquidation as represents income belongs to the life ten-
ant and so much as represents principal goes to the
corpus for the remainderman: Earp's App., 28 Pa. 368;
Packer's Est., 291 Pa. 194.

Appellant contends that she has proved five cases of
increases in the assets of the corporation during the
period in question which are not "net earnings" but
which are "principal accretions."

The book value of the assets is not sufficient to prove
their intrinsic value: Baird's Est., 299 Pa. 39.

The court erred in awarding the whole stock dividend
to the life tenant: Dickinson's Est., 285 Pa. 449; Gra-
ham's Est., 296 Pa. 436; Dayton Goose Creek Ry. v.
U. S., 263 U. S. 456.

The life tenant's proportionate share of the income or
earnings should have been distributed to her in divi-
dend obligations at their market value: Earp's App.,
28 Pa. 368.

444

The trustee's chief argument was based on two decisions of this court in which Mr. Chauncey was directly interested, namely Robinson's Trust, 218 Pa. 481, in which Mr. Chauncey was the substituted trustee, and Boyer's App., 224 Pa. 144, in which Mr. Chauncey was counsel for the remainderman,—both of these cases involving stock dividends consisting of dividend obligations of the R., F. & P. R. R.

*Henry C. Boyer,* for appellee.—The rule in Pennsylvania respecting the distribution of extraordinary dividends between a life tenant and remainderman declared during the life tenancy in a trust estate is that the division shall be made so as to preserve intact the book value of the corpus of the trust as it existed at the inception of the trust, or, to use a convenient term, to preserve the intact value of the estate, giving the balance to the life tenant: Flaccus's Est., 283 Pa. 185; Nirdlinger's Est., 290 Pa. 457; Packer's Est., 291 Pa. 194; Jones v. Integrity Trust Co., 292 Pa. 149; Graham's Est., 296 Pa. 436; McKeown's Est., 263 Pa. 78; Boyer's App., 224 Pa. 144; Robinson's Trust, 218 Pa. 481.

*Thomas Raeburn White,* of *White, Parry, Schnader & Maris,* for Fidelity-Phila. Trust Co., trustee, under will of Charles Chauncey, deceased, appellee.—There are many expressions of this court which would seem to throw doubt on appellant's claim that profits, from sales of capital assets occurring after the trust begins, result in increasing the intact value of shares which must be preserved for the remainderman: Boyer's App., 224 Pa. 144; Stokes's Est. (No. 1), 240 Pa. 277; McKeown's Est., 263 Pa. 78; Waterman's Est., 279 Pa. 491; Flaccus's Est., 283 Pa. 185; Wittmer's Est., 283 Pa. 311; Mallory's Est., 285 Pa. 186; Dickinson's Est., 285 Pa. 449; Mandeville's Est., 286 Pa. 368.

The award was proper: Lauman v. R. R., 30 Pa. 42; Pennsylvania Utilities Co. v. Pub. Ser. Com., 69 Pa. Su-

perior Ct. 612, 618; Clearwater v. Meredith, 68 U. S. (1 Wall.) 25, 40; R. R. Co. v. Georgia, 98 U. S. 359, 362; Yazoo & Mississippi Valley Ry. v. Adams, 180 U. S. 1.

OPINION BY MR. JUSTICE KEPHART, March 16, 1931:

This appeal is by a remainderman from the refusal of the court below to grant a petition for the review of an order which was previously made in this estate, awarding stock dividends to the life tenant. Granting or refusing to grant a petition for review of a former proceeding, order, or decree, is a matter within the sound discretion of the court below (Bailey's Est., 291 Pa. 421), and the court's action will not be disturbed unless there is an abuse of that discretion. It was contended in the petition to review that, if certain evidence had been received during the first hearing, the dividend would have been awarded to the remainderman. In relation to this matter, the court below said: "We are not convinced that justice and equity require a review in this case. All the evidence that was considered by the court with respect to these dividend obligations was in the form of depositions of the officers of the company showing records and transactions of the company over a long period of time.

"The account was called for audit June 25, 1928, and a further hearing had October 19, 1928. Voluminous depositions were taken and admitted in evidence. The records of the company referred to in the petition were just as available to the petitioner then as they were at the presentation of this petition, or are now, and the evidence proposed to be offered is of the same character as that which was admitted and considered by the court. It is not in the nature of after-discovered evidence. We are of the opinion, therefore, that the petition should be dismissed."

Distribution of extraordinary dividends between a life tenant and remainderman shall be made so as to preserve the intact value of the estate: Flaccus's Est.,

283 Pa. 185; Nirdlinger's Est., 290 Pa. 457. Such dividends presumptively belong to the life tenant, unless it appears that the intact value of the trust estate is thereby reduced or that the life tenant is not otherwise entitled: Nirdlinger's Est., supra, page 468; Graham's Est., 296 Pa. 436; McKeown's Est., 263 Pa. 78. The burden is on the remainderman to prove that the intact value of the trust estate is thereby diminished or that he is entitled to the dividend or a part of it: Graham's Est., supra; Boyer's App., 224 Pa. 144; Robinson's Trust, 218 Pa. 481.

Appellant claims that five items which were principal accretions attributable to capital were used as a basis for the stock dividend by the Richmond, Fredericksburg & Potomac Railroad, and that any dividend received by the trustee, having such items as a basis, should have been awarded to the corpus for the remainderman. The five items were as follows: first, an increase of capital assets over capital charges, reflected in a surplus account arising through a merger; second, profits from the sale of property accruing after the death of testator; third, a reserve fund set apart from earnings and income under the recapture clause of the Act of Congress of February 28, 1920, paragraphs 6 and 7, known as the Transportation Act; fourth, a sum received from the government on account of deficiencies in material and supplies when railroads were turned back to the owners after the war; and, fifth, the amount necessary for the company to spend to restore the physical condition of the railroad to what it should have been when government control ended, which sum was afterwards paid to the company by the government.

Appellant relies on Dickinson's Est., 285 Pa. 449, to sustain his contention. We there held that paid-in capital did not constitute earnings. Very often in organizing financial institutions, a sum in excess of the par value of the stock is paid in by shareholders. This sum is carried as a surplus, or, as said in Dickinson's

Est., supra, "contributed surplus." We there held that in apportioning a stock dividend which was declared from a surplus which in part represented contributed surplus and in part earned income, enough shares should be awarded to the corpus of the estate to maintain the intact value plus that portion of the shares issued against contributed surplus. From this case we have the rule that stock dividends declared out of contributed capital must, in the distribution between life tenant and remainderman, be held in the corpus of the trust for the protection of the remainderman.

In instances like the merger of the Richmond, Fredericksburg & Potomac Railroad with the Washington Southern Railway Co., it is sometimes difficult to determine whether the given item should be treated as principal accretions or as profits. As a result of the merger, the former railroad acquired $5,800,000 of assets against which was issued $4,000,000 of stock as a capital charge; the balance, being an earned surplus on the books of the Southern, was transferred to a like account in the consolidated company, the Richmond, Fredericksburg & Potomac Railroad. The effect of a merger was a coalescence of physical properties, accounts and all assets: Lauman v. Lebanon Valley R. R. Co., 30 Pa. 42, 45; Penna. Utilities Co. v. Pub. Ser. Com., 69 Pa. Superior Ct. 612. The consolidated company treated the two earned surplus accounts as an earned surplus on the books of the consolidation. When the two companies were separate, the stockholders of each were entitled to the surplus earnings as a dividend if the directors saw fit to so declare it. When they were joined, unless prevented by law, they were still entitled to that surplus as a dividend. This is the ordinary rule. Whether or not the shareholders of the new stock issued by the Washington Southern Company were entitled to participate as ordinary shareholders of the new concern because of the character of the stock received by them, we need not decide. As we view the matter, that question is immate-

rial. In the distribution of the stock dividend between the life tenant and remainderman based on a consolidated surplus account of two companies and other items of profit, courts will consider the consolidated surplus and profit as earnings or income; the shares received by virtue of this dividend will be awarded to the life tenant subject to the usual rule of apportionment.

On the other items of so-called principal accretions mentioned above, it may be stated that where earnings are produced from the entire capital or part of it and invested in capital assets, any stock dividends declared thereon will be treated as income and be divided between the life tenant and remainderman so as to preserve the intact value of the stock. Appellant argues that no profits made by a railroad company during the period of a trust can be considered as enuring to the benefit of a life tenant except earnings from the operations of the railroad. With this we cannot agree. On the contrary, profits derived from miscellaneous sources are always included in the profits of the road, and dividends, both cash and stock, may be paid out of them. Such profits, realized since the testator's death, are fairly attributable to earned surplus.

Stress is laid on Graham's Est., 296 Pa. 436. In speaking of surplus account we there said it may represent the enhanced or present-day value of bonds. We were discussing the right as to which one of successive life tenants was entitled to a certain proportion of earnings and used an illustration to show that items in the surplus account may not be earnings as earnings are generally known, but we did not say that, where bonds were sold at a profit, this profit should not be considered as earnings. We are not here called on to decide whether the profits derived from the sale of real estate in the hands of a trustee should be awarded to corpus or income. We are dealing with corporate stock the underlying value of which is composed of many items.

So far as appellant's last three contentions are concerned, we need only point out the fact that after giving effect to the stock dividend the amount remaining in the earned surplus account was considerably in excess of the total involved in appellant's objections. These questions are therefore academic.

The court below did not abuse its discretion in refusing the petition.

The decree of the court below is affirmed at appellant's cost.