**French Estate**

*Ernest E. Heim* and *Graham French*, for accountant.

*Graham French*, for life tenant.

*Stanley B. Cooper*, for remaindermen.

HOLLAND, P. J., October 30, 1952.—Testator died on December 22, 1925, leaving a will dated March 17, 1920, with codicils thereto dated, respectively, November 18, 1921, and April 20, 1923, all duly probated on December 30, 1925.

Testator gave the residue of his estate to his trustee,

to divide into four equal parts, one for each of his children, Augusta Graham French Wallace, Bessie Graham French Cummin, James Graham French, and Clayton French, to be continued in trust until the death of the survivor of his children, to pay the income of each child's trust to such child during life, and at the death of each child to pay the income to such deceased child's issue and to pay the principal, at the termination of the trust, to such of them as are then living. The further provisions of the trust are not necessary to recite for the purposes of this adjudication.

Augusta Graham French Wallace and James Graham French, two of testator's children, are still living, and the trusts therefore continue.

An account has been filed to the present audit list in each of the four trusts, principally for the purpose of determining whether there should be an apportionment, as between principal and income, of certain stock dividends received, and of the proceeds of sale of certain securities and certain rights to subscribe.

. . .

On January 29, 1951, the American Telegraph and Telephone Company gave their common shareholders rights to subscribe to convertible debenture 3⅜%, 1963, $100 debentures per seven shares of stock held at par. Rights expired March 19, 1951. The debentures were convertible into common stock beginning June 1, 1951, at $138 ($100 debenture plus $38 cash). Debentures are callable commencing March 19, 1952, on 30 days' notice at an initial call price of $107.

The trustees sold 150 of these rights at $1.70 each net, realizing $225, which are entered short in the receipts of principal on page 14 of the account under date of March 14, 1951. The income beneficiaries have excepted to this on the ground that the proceeds of the sale of rights should be apportioned to the in-

come beneficiaries, but the guardian and trustee ad litem takes the position there should not be any apportionment and that the proceeds should remain in principal. His position is based on the fact that the rights were not to subscribe to stock of the American Telephone and Telegraph Company, but rights to subscribe to debentures of that company. In the stipulation of facts it is agreed that if there should be apportionment, the entire amount may be paid to the income beneficiaries without impairing the intact value of the common stock held in the principal of the trust.

The answer to the question whether there should be apportionment under the rules depends, in every case, upon the source of the benefit, in the form of the rights bestowed by the company on the shareholders, as well as their effect upon the value of the remaining assets of the company.

As to the presumptions governing apportionment, when indicated, it is stated in Waterhouse's Estate, 308 Pa. 422 (429):

"[d] Proceeds arising from the sale of stock rights should be distributed in the same manner and have the same presumptions following as in the sale of stock. They are a species of stock. This is the main question here involved.

"We have held [citing Jones v. Integrity Trust Co., 292 Pa. 149] that proceeds from the sale of stock rights, . . . 'must be apportioned in the same manner as an extraordinary stock dividend would be; that is, there should be allotted to the corpus of the trust sufficient thereof to maintain unimpaired the intact value of the stock held by it, and the life tenant should receive the balance, because it represents corporate earnings which accumulated after he became entitled to all dividnds. . . .'

"[428] [b] Extraordinary dividends, commonly called stock dividends are distributed and apportioned

as follows. The presumption is that an extraordinary stock dividend is from earnings and belongs to the life tenant. [Citing Earp's App., 28 Pa. 368; Graham's Estate, 296 Pa. 436; Chauncey Est., 303 Pa. 446; McKeown's Est., 263 Pa. 78.]

"[429] Where an extraordinary stock dividend is made from increased capital assets not chargeable to earnings, such as contributed surplus and the like, the stock dividend belongs to the corpus [Citing Dickinson's Est., 285 Pa. 449]. The burden of proving that the intact value of a trust estate is or will be diminished, and that an extraordinary stock dividend or part of it belongs to the corpus, is on the trustees or remainderman. [Citing Earp's App., supra; Graham's Est., supra; Chauncey Est., supra; McKeown's Est., supra.]"

After a careful study of the matter, there seems to me to be no reason, nor have I been apprised of any authority, for applying a different philosophy or method to determine, first, whether apportionment is indicated, as between a right given to subscribe to stock and a right to subscribe to debentures and, secondly, where indicated, how that apportionment shall be made. It is not claimed by the guardian ad litem that the issuance of the rights in question has impaired the intact value of the shares held in the trust. In fact, as much is admitted by the agreement that, if the proceeds of the sale of the rights are found to be subject to apportionment, the whole sum may be awarded to the income beneficiaries.

I am of the opinion that the proceeds of the rights to subscribe to the debentures of the American Telephone and Telegraph Company are subject to apportionment and, therefore, under the agreement of the parties, the accountant is surcharged in income with the sum of $225 received as proceeds, and is allowed an additional credit in principal of the same sum. . . .