Graham's Estate.

Argued January 15, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. H. Shoemaker*, for appellant.—The cases, from Earp's App., 25 Pa. 368, down to Nirdlinger's Est., 290 Pa. 457; Packer's Est. (No. 1), 291 Pa. 194, and Jones v. Trust Co., 292 Pa. 149, hold that the intention as judicially determined of a testator who creates a trust for life with remainder over, the corpus of which consists in whole or in part of corporate stock, is that the stock of the value at the time of his death, or its equivalent, together with any unearned increment, shall ultimately belong to the remainderman, and that all extraordinary or stock dividends declared from profits of the corporation earned during the life tenancy, the corpus of the trust remaining unimpaired, shall belong to the life tenant, no matter when declared, whether before or after the death of the life tenant.

The general practice in accounting and settling with successive life tenants always has been as contended by appellant: Simpson's Est., 23 Pa. Dist. R. 27; Wilcox's Est., 66 Pa. Superior Ct. 182; Thaw's Est., 73 Pitts. L. J. 289.

*John Hampton Barnes*, of *Barnes, Brinton & Biddle,* with him *Charles Myers,* for appellee.—The two parts of the whole, the principal and the income, must each be treated as a unit, and, where the principal of the estate

is maintained, any distribution is treated as income and goes to the person entitled to the income: Moss's App., 83 Pa. 264; McKeown's Est., 263 Pa. 78.

The position of appellee is that that estate is a unit and that the current income from it is payable to the living person or persons entitled to income under the familiar rules determining those entitled to receive dividends.

A payment to the executors of Henrietta H. Dunne several years after her death would not carry out testator's desire to provide for her as the special object of his interest. He wished the income to go into her hands, meaning thereby her living hands, and when this possibility was extinguished by her death, her right to income accruing thereafter ceased: Waterman's Est., 279 Pa. 491.

OPINION BY MR. JUSTICE KEPHART, February 11, 1929:

The Philadelphia Trust Company, as trustee in the estate of John S. Graham, held 100 shares of stock of the company, the income from which was to be paid to successive life tenants as beneficiaries. The Philadelphia Trust Company was merged with the Fidelity Trust Company as the Fidelity-Philadelphia Trust Company. As a result of the merger 150 shares of stock were delivered to the trustee. In adjudicating its account, the auditing judge held that the additional 50 shares was an extraordinary stock dividend, distributable as such. Of course, neither appellant's nor appellee's counsel, who respectively represent the first life tenant's heirs and the present life tenant in remainder, contests the validity of this holding, and, as the representative of the residuary legatees, the ultimate remaindermen, did not except to the finding nor appeal, the question as to the character of the dividend is now closed. In passing, we may say the record shows that the intact value of the trust estate at the death of John S. Graham is not affected nor will it be disturbed by the allotment of the 50 shares as

an extraordinary dividend, whatever its disposition may be. The court below awarded it to the present life tenants.

It is appellant's contention that inasmuch as the extraordinary dividend was declared in part from earnings that had accrued during the lifetime of the first beneficiary, it should be apportioned between the heirs or legal representatives of the first life beneficiary and the life beneficiary in remainder, as the earnings of the company during the first life tenancy bore to the total earnings, up to the date of the dividend. This is claimed under the authority of McKeown's Est., 263 Pa. 78, and Nirdlinger's Est., 290 Pa. 457, followed by Packer's Est. (No. 1), 291 Pa. 194, and Jones v. Integrity Trust Co., 292 Pa. 149.

Where one claims from an estate, he must show such facts as will warrant a distribution to him. Here the court below distributed an extraordinary dividend; where there is a dispute as to the individual entitled to such a dividend, before that individual may be determined, the facts on which the dividend rests, as they bear on the primary question, must first be taken into account. Ordinarily the person to receive is controlled prima facie by the rule that an extraordinary or stock dividend is presumptively payable to the party entitled to the income when the dividend is declared, but this presumption must yield to proof of adverse facts (McKeown's Est., 263 Pa. 78, 86), that is, proof of the manner in which the dividend is made up and that its existence will not injure the original investment or intact value. Here the first thing to be done was to establish earnings during the lifetime of the first taker, that were reflected in the stock dividend.

It is agreed that the intact value of the stock at testator's death was $354 a share, and that the value per share after the merger was $472; it is also agreed the value immediately before the merger, in 1926, was approximately $700 per share; but there is no evidence to

show earnings to the first life tenant's death, and the value for each share at that time is not stated. It was thus found by the court below: "It does not appear whether any of these undivided profits were earned in the lifetime of the first beneficiary." The stipulation of facts throws no light on the question, and we cannot reason it from the trial balance submitted. The gain in surplus does not always represent earnings, as that term is understood, nor does its mere presentation in evidence throw the burden on the accountant to explain the several items that make it up. It may not be attributable solely to the natural earnings of the stock, for it may in part represent other items of increase not attributable to stock earnings; it may, indeed, state the enhanced or present-day value of bonds purchased. From this same surplus are properly deductible losses on account of bad loans or other investments accruing during the period of the first life tenancy. Surplus often becomes in part or in whole a matter of bookkeeping. There may be cases where better evidence is not available or through other circumstances it may be used to establish a fact, but we are here considering the division of a testator's property, where the desired course of distribution is in opposition to a legal presumption. We have no evidence of earnings, and before the principal question is considered we may be met with another question which need not now be discussed. As it is, any decision on the main point presented by appellant will not be discussed.

It is urged, however, that the judgment should be affirmed as was that in Nirdlinger's Estate, without prejudice to appellant's right to prove his case in the court below, but the situations are not at all alike. In Nirdlinger's Estate, a definite sum was fixed as to the earnings during the life tenancy and it was so considered by the court below. As that sum was contested here, because of the manner in which it was treated by the court below, manifestly the life tenant should not have been precluded under such circumstances from submitting his

full case. If we do as appellant now suggests, we would be compelled to follow the same course whenever a case was decided adversely for want of evidence. That is not and should not be the practice.

The decree of the court below is affirmed with costs.