## Hostetter's Trust.

Argued October 15, 1935. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Allen G. Lynch,* with him *Charles C. Heard,* for appellants.

*H. F. Stambaugh,* with him *Watson & Freeman* and *Charles Alvin Jones,* of *Sterrett, Acheson & Jones,* for appellees.

OPINION BY MR. JUSTICE KEPHART, November 25, 1935:

Under four separate deeds of trust for different beneficiaries executed in 1920 by D. Herbert Hostetter to the Fidelity Trust Company as trustee, 1,300 shares of the common stock of the Pennsylvania Railroad Company were assigned to the trustee in each of them. Since all four of these deeds raise the same problem, we will confine our discussion to the deed naming Frederick G. Hostetter as life beneficiary, and treat its solution as applying to all. At about that time the book value of each share was $78.60. On March 28, 1928, the Pennsylvania Railroad Company granted rights to its stockholders to subscribe for additional shares at the rate of one share of new stock for each eight shares, at a price of $50 per share. The trustee subscribed for 162 shares and paid therefor from corpus $8,100. Immediately after the issuance of the additional stock purchased under the sub-

scription rights, the book value of the stock was $89.129 per share. It had been $94.02 before the issuance of the stock on March 28, 1928. The stock so acquired was held in corpus.

On November 27, 1929, the company again granted rights to stockholders to subscribe for additional shares at the rate of one share of new stock for each eight shares, at a price of $50 a share. The trustee took up the rights allotted to the trust estate and, having purchased two additional rights for $7, subscribed for 183 shares and paid therefor from corpus $9,150. The book value before November 27, 1929, was $96.73 a share and, after the additional stock had been purchased, the book value of the stock was $91.65. So at the completion of the second subscription there were 1,645 shares of stock in the corpus with a total value of $150,764.25, while the corpus or intact value of the 1,300 shares at the date of the creation of the trust was $102,180.

The court below, in passing on the account of the trustee and distributing the shares of stock therefrom, retained in the trust estate 1,304 shares and awarded the balance to the life tenants on the theory that the intact value of the shares of stock at the date of the creation of the trust had increased through earnings until it reached the high point of $96.73 a share and that the allottment of the surplus shares to the life tenant did not impair the value of the estate. There is nothing in the record to show that the increase in the value of the shares was not due to earnings. The presumption is that an extraordinary dividend declared by a company is based on earnings: Chauncey's Est., 303 Pa. 441, 446; Graham's Est., 296 Pa. 436, 439; McKeown's Est., 263 Pa. 78, 85; Nirdlinger's Est., 290 Pa. 457, 468; Waterhouse's Est., 308 Pa. 422, 428.

Appellant raises the question, Should the life tenant be entitled to the benefit arising from a distribution of earnings through the use of rights to subscribe for stock where the trustee exercises such right with funds from

the corpus of the trust, without paying or reimbursing the corpus of the trust with the subscription price? Or, it may be restated, Did the court below and the trustee abuse their discretion and authority in distributing to the life tenant the earnings, reflected in surplus and distributed through subscription rights, by delivering the surplus stock in the trustee's possession, it being conceded that the stock does represent earnings accruing from the date of the creation of the trust to the date of the stock issue and that the intact value of the corpus is preserved?

We said in Jones v. Integrity Trust Co., 292 Pa. 149, 153, in an opinion by Mr. Justice SIMPSON, "We now definitely decide that, where a corporation gives to the trustees of an estate the right to subscribe for new stock, and they avail themselves of such offer, the benefit resulting therefrom must be apportioned in the same manner as an extraordinary stock dividend would be; that is, there should be allotted to the corpus of the trust sufficient thereof to maintain unimpaired the intact value of the stock held by it, and the life tenant should receive the balance, because it represents corporate earnings which accumulated after he became entitled to all dividends at any time thereafter payable out of such accumulations."

Here the trustee held sixteen hundred and forty-five shares of stock in the corpus. As long as the stock remained in its hands it would only be required to account for the dividends: Buist's Est., 297 Pa. 537, 543. But where stock that produces income is sold for a price greater than the intact value and such greater price is due to an accumulation of income, the proceeds are apportionable; that is, so much of the proceeds as is necessary to preserve the intact value goes to the trustees, and only so much of the balance as represents income goes to the life tenant: Waterhouse's Est., supra, at 429. Here the trustees had income-producing shares of stock in their hands after a purchase such as was contemplated

in Jones v. Integrity Trust Co., supra. They could have sold the stock so purchased and distributed the proceeds to the life tenant without impairing intact value. Instead of selling it they allotted the stock in kind to the life tenant. We see nothing wrong about this (see Nirdlinger's Est., supra) and there is nothing in Buist's Est., supra, that in any way offends this conclusion.

It would be manifestly unfair to the life tenants to hold this stock in the trustee's possession for the remaindermen, since it had been issued on accumulated surplus brought about by the earnings of the company. It would be a greater wrong if the life tenants were compelled to add $17,250 to the value of the shares remaining in the corpus before securing the stock, since that would make a total value of $136,761 for remaindermen. In giving to the life tenant the surplus shares over that necessary to keep the value of the shares at the date of the trust plus that amount expended for purchase of the additional shares, no harm was done to remainder interests. The corpus of the estate must be credited with the amount taken therefrom for the purchase of the stock, $17,250, and this new intact value must be preserved for the benefit of the remainder; but it is reflected in the value of the stock now remaining with the trustee, namely 1,304 shares at $91.65 a share, or $119,511.60.

Decrees affirmed, costs to be paid from earnings of corpus.