Barnes' Estate.

Argued April 17, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*R. W. Beatty,* of *Butler & Beatty,* for appellants.

*Eugene P. Balderston, Jr.,* guardian and trustee ad litem, for appellee.

OPINION BY MR. JUSTICE STERN, May 6, 1940:

The decision of the court below and appellee's argument in support of it rest upon a misconception of the Pennsylvania rule of apportionment of extraordinary dividends between life tenants and remaindermen, and of the reasons upon which that rule is based.

John Barnes died in 1930, leaving a will in which he gave his residuary estate to trustees in trust to pay the net income to his wife during her widowhood, up-

on her remarriage to transfer to her one-third of the principal, and to pay the net income from the remaining two-thirds to his children until the death of the last surviving child, and then to distribute the two-thirds of the principal among the descendants of his children per stirpes. The widow remarried in 1932 and received the part of the principal to which she was entitled under the will. The trustees have now filed an account of the two-thirds remaining in the trust.

Included in the residue of decedent's estate and thus forming a part of the trust were 2,500 shares, constituting all of the stock, of the Bird Coal Company. This company owned 2,130 shares of preferred stock of the Keystone Portland Cement Company and also a note of that company for $500,000 for money loaned to it by the Coal Company. In 1931 the Coal Company accepted in payment of this note 5,000 shares of the preferred stock of the Cement Company, so that it then owned 7,130 shares. In December, 1931, the Coal Company distributed, as a 100% dividend, 2,500 of these shares, which the trustees accounted for as principal, later, after the remarriage of decedent's widow, transferring to her one-third thereof, and retaining the remaining 1,667 as part of the corpus of the trust.*

In 1933, 1934 and 1935, in addition to cash dividends which are of no present concern, the Coal Company distributed as dividends 3,313 shares of the preferred stock of the Cement Company. Of these the trustees received two-thirds, or 2,210 shares, which they again accounted for as principal but which are claimed by the four children of decedent as income due to them as life tenants, and it is these 2,210 shares which are

---

* The life tenants (appellants) assert that they would have been entitled to a part of these 1,667 shares as income if they had made claim at the time, the coal company having then earned more, since the creation of the trust, than the value of the shares distributed as a dividend. They admit, however, that it is now too late for them to make such a claim.

now in controversy. Appellee was appointed to act as guardian and trustee ad litem for decedent's grandchildren and unborn remaindermen. The Orphans' Court held that the 2,210 shares were properly carried in the trust as corpus, from which ruling the life tenants have taken this appeal.

The controlling fact in the case, which stamps the decree of the court below as erroneous, is that the earnings of the Coal Company from the time of decedent's death to the end of the year 1935 were approximately $580,000, which was considerably more than the sum total of the cash dividends and the value of the preferred stock of the Cement Company distributed as dividends in 1933, 1934, and 1935, with the result, as appellee admits, that the intact value after the distribution of these dividends was equal to and even greater than it was after the distribution of the dividend of 1931. The 1931 dividend, being all retained in the trust as principal, did not, of course, diminish the value of the corpus as it existed at the time of decedent's death.

The position taken by appellee is that, because the dividends here involved were paid in Cement Company stock which was owned by the Coal Company prior to the creation of the trust, (or came into its ownership shortly thereafter by way of payment of the Cement Company's note), these dividends therefore belong to corpus. In other words, though conceding that if the Coal Company had distributed *cash dividends of the same value* as the Cement Company stock such dividends would have belonged to the life tenants, appellee argues that the dividends as actually declared should be awarded to corpus merely because the Company chose to distribute them in the form of assets which it owned before the death of decedent. This overlooks the vital point that the apportionment rule has only one requirement, namely, that when an extraordinary dividend is declared it must not reduce the intact value of the stock held in the trust. If, at the death of a stockholder, the

corporation, in addition to its capital, has accumulated surplus profits, the latter may, of course, be distributed by the corporation as dividends, but if, before this is done, the stockholder creates a trust of his stock, the accumulated surplus is, in a sense, thereby capitalized as far as the trust is concerned, and when, therefore, an extraordinary dividend is later declared out of such surplus the dividend must be awarded to the corpus of the trust in order that the value of the latter should not be reduced from what it was when the trust was created. But if profits are earned by the corporation after the creation of the trust, and an extraordinary dividend is declared *in an amount not greater than such profits,* the dividend belongs to the life tenants, and it is immaterial whether the *medium* in which it is paid consists of cash or other property, or, if the latter, whether the particular assets distributed were or were not in the portfolio of the company at the time of decedent's death. There would be neither logical nor practical reason for introducing such an innovation in the rule of apportionment. The sole question is whether there is an impairment of the intrinsic value of the shares held in the trust; the rule is not concerned with the identity of the property constituting that value. It is only when the extraordinary dividends exceed the profits earned after the beginning of the trust that apportionment is required and the life tenant denied the right to the full amount of the dividends: *Wittmer's Estate,* 283 Pa. 311. From *Earp's Appeal,* 28 Pa. 368, to its latest formulation in *Lueders' Estate,* 337 Pa. 155, the rule has been stated to be that, where extraordinary dividends are declared and paid on shares of stock left by a decedent in trust, all that the remaindermen are entitled to is that there be retained in the corpus a sufficient portion of the dividend to keep intact the value of the shares as they existed at the time the trust was created. As was said (by way of quotation) in *Boyer's Appeal,* 224 Pa. 144, 150, 151: "The result is arrived at, by ascertaining what the value of the stock was when the life

tenancy was created. After the issue of bonus, its value is again determined. If it is less than it was at first, just to that extent is it held that the capital has been impaired, and the trustee must apply to the corpus of the estate enough of the bonus to make the capital equal to what it was when the trust was created. If on the other hand the stock is found to be as valuable as when the trust was created, or of greater value, the capital has not been decreased, and the bonus goes in whole to the life tenant." To this the court added: "In other words, it seems to be the doctrine of our cases, that the remaindermen are entitled to just what the stock was actually worth at the time of the creation of the trust, no less and no more." And in *Moss's Appeal,* 83 Pa. 264, 269, it was said: "Where a corporation, having actually made profits, proceeds to distribute such profits amongst the stockholders, the tenant for life would be entitled to receive them, and this without regard to the form of the transaction. Equity, which disregards form and grasps the substance, would award the thing distributed, whether stock or moneys, to whosoever was entitled to the profits."

In the present case it is conceded by appellee that the Coal Company has an even larger surplus now than it had when the trust was created, the only difference being that one of the items originally composing the surplus, namely, some preferred stock of the Cement Company, has been replaced by an equal or greater amount of cash or other assets representing subsequent earnings. The remaindermen, therefore, are not suffering any diminution in the value of their principal by an award of the dividend in controversy to the life tenants who are clearly entitled to it.

The decree of the court below is reversed, and the record is remitted for the entry of a decree in accordance with this opinion. Costs to be paid out of the corpus of the trust estate.