## Bamberger Estate

Before Klein, P. J., Bolger, Lefever, Shoyer, Saylor, JJ.

*Morton Craine* and *Herman Toll*, for exceptants.

*Cuthbert H. Latta* and *Barnes, Dechert, Price, Myers & Rhoads*, contra.

LEFEVER, J., April 22, 1960.—Should the share of apportionable items allocated to income under the Pennsylvania rule of apportionment be apportioned among successive life tenants? This question is before us upon exceptions to the refusal of the learned auditing judge to make such apportionment under the facts and circumstances of the present case.

Testator died in 1902. Under his will his residuary estate was placed in trust to pay the net income to successive life tenants, namely, his wife, his children and the issue of deceased children, and, upon the death of his last child, to distribute the corpus among the issue of his children or as each child should appoint among his own issue. In 1958, testator's last child died and the trust terminated.

There is presently before the court trustee's second account. In that account and the papers submitted at the audit, accountant indicates that a net sum of approximately $40,800 is transferrable from principal to income under the Pennsylvania rule of apportionment. This sum arises from a liquidating dividend of Northern Trust Company (Philadelphia) in 1948, the net proceeds from the sale of stock rights of Delaware Power and Light Company and gains upon the sale of shares of stock of the same company, which sales oc-

curred in 1952, and gains upon the sale of shares of stock of Finance Company of Pennsylvania in 1956.

The account was originally called for audit before Judge Saylor on October 9, 1958. He filed an adjudication on November 10, 1958. A further hearing was held on December 22, 1958, and a "Supplemental Adjudication" was filed on May 1, 1959. Exceptions thereto were argued before the court en banc in November 1959. Thereafter, the case was referred back to Judge Saylor for further hearing. That hearing was held on February 4, 1960, and a second "Supplemental Adjudication" was filed on February 24, 1960. Therein, Judge Saylor adhered to his prior decision that the apportionable income in this case arising from application of the Pennsylvania rule of apportionment should not be apportioned among successive life tenants, but should be awarded to the life tenants living on the date of the apportionment-requiring event. Exceptions to that adjudication are now before us. If exceptants prevail the fund at issue will be apportioned among living life tenants and the estates of at least eight deceased life tenants, including testator's widow who died in 1918, one of testator's sons who died in 1923, and exceptant's decedent, testator's daughter, who died in 1939.

There is surprisingly little authority on the point at issue. The earliest case precisely in point [1] is Graham's Estate, 10 D. & C. 695, affirmed 296 Pa. 436. There, testator left his residuary estate in trust, income to be paid to his niece and successive life tenants thereafter. After the niece's death, but before the termination of the trust, the trustee received 50 shares of stock, which the auditing judge ruled to be an ap-

---

[1] Simpson's Estate, 23 Dist. R. 27, peripherally involves apportionment between successive life tenants. However, the pivotal point of the case was interpretation of a will.

portionable dividend. The issue then presented was whether the stock dividend was apportionable between the estate of the deceased niece and the life tenant then receiving income. Auditing Judge Thompson of this court held that the shares were allocable to the living life tenant, saying at pages 699-700:

"The surplus of a corporation until it is distributed by proper corporate action belongs to the corporation, and until such time no right to distribution accrued to the stockholder, and, consequently, does not accrue under his will to a deceased life-tenant. . . .

"The settled policy of the law is to give to every beneficiary under a will exactly what the testator gives; and as the fifty shares in question are, as heretofore found, to be regarded *as income accrued during the present life tenancy, irrespective of when the profits accrued to the corporation*, so they accrued since testator's death, it would, in my opinion, be doing violence to testator's express wishes to give any portion thereof either to the equitable life-tenant, who died before its accrual, or to the remaindermen, who are only entitled to the estate as it existed at testator's death, with whatever accretions thereto there may be when the trust ends." (Italics supplied.)

The court en banc in an opinion by Lamorelle, P. J. (Henderson, J. dissenting), agreed with this conclusion and dismissed the exceptions "for the reasons given by the Auditing Judge in his adjudication". The Supreme Court affirmed; it did not specifically rule upon the point here at issue, but stated that there was *no proof* of an accumulation of earnings during the first life estate.

Waterhouse's Estate, 16 D. & C. 73, also arose in this court. There, too, the will provided for successive life estates. An apportionable sale of stock was made during the term of the second life tenant and the estate of the deceased first life tenant claimed a share

of the fund apportioned to income. The deceased life tenant's executor supplied *exact proof* of an accumulation of earnings during the first life estate. Despite this, the auditing judge (Lamorelle, P. J.) followed this court's decision in Graham's Estate, supra, and excluded the deceased life tenant's estate, stating at page 84:

"The sale of these sixty-seven shares occurred more than seven years after the death of Bessie V. Waterhouse [the first life tenant] and at a time when the entire income was payable to the two daughters. In Graham's Estate, 296 Pa. 436, the question of apportionment between successive life tenants arose. This court held that it was immaterial whether anything or nothing was earned during the lifetime of the deceased life tenant; and in any event, the surviving *cestuis que trustents* were alone entitled. On appeal to the Supreme Court, the judgment of the court below was affirmed on the ground that there were no figures submitted showing how much had been earned during the lifetime of the deceased life tenant. Justice Kephart, who delivered the opinion, said, *inter alia:* 'Here, the first thing to be done was to establish earnings during the lifetime of the first taker . . .' (p. 439) 'but there is no evidence to show earnings to the first life tenant's death . . .' (pp. 439 and 440). 'We have no evidence of earnings . . .' (p. 440). 'As it is, any decision on the main point presented by appellant will not be discussed' (p. 440). The main point to which Justice Kephart referred was the apportionment between successive life tenants. . . .

"In the circumstances, the Auditing Judge feels that he is bound by the decision on this point by this court, although he realizes that it is, in view of what the Supreme Court has said, *obiter dicta*. He, therefore, rules that the executor of the estate of Bessie V. Waterhouse, deceased, is not entitled to any portion

of the price received from the sale of these sixty-seven shares of stock."

Exceptions to this adjudication were dismissed by the court en banc in a per curiam opinion. The deceased life tenant's executor squarely raised the question of apportionment between successive life tenants in his appeal. The Supreme Court, at 308 Pa. 422, 431, affirmed the decision of this court in toto. Therefore, although the opinion of the Supreme Court does not discuss this specific issue, the case stands for the principle of law that apportionment income is *not* apportionable between successive life tenants.

In Neafie's Estate, 25 D. & C. 608, 325 Pa. 561, the income portion of the gain upon the sale of stock in three different corporations was apportioned among successive life tenants. The facts in this case do not appear in the opinion of this court, written by Judge (later Mr. Justice) Stearne, nor in the opinion of the Supreme Court. Therefore we have resorted to the record in this case. It indicates that the auditor appointed by this court, in an exhaustive report, analyzed the operations of each of the three corporations based upon full and complete evidence presented to him. From this evidence he computed the intact value of the respective shares of stock at testator's death, the amount of earnings accumulated between the date of testator's death and the date of the sales of the stock of the respective corporations, the exact amount of accumulations in each corporation and the periods within which these accumulations occurred. From these data he made recommendations as to apportionment between income and principal and as to what he considered equitable division of the allocated income among the successive life tenants, based upon his interpretation of the holdings in Graham's Estate and Waterhouse's Estate, supra. This court accepted these recommendations without making an independent analysis of the facts involved, stating at page 618:

"Disputes have arisen between the living life tenant and the estates of the preceding deceased life tenants. The auditor, upon clear proof, equitably divided income among them. The amount awarded to each life tenant depended upon the proofs as to how much of the total income was earned during each successive life estate. This, as we understand Graham's Estate, 296 Pa. 436, is the correct rule. True it is that where *there is no proof of earnings in the respective lives of the preceding life tenants the life tenant presently entitled takes all the income. But here there was proof submitted in sufficient strength to overcome this presumption and to justify the equitable apportionment made by the auditor.*" (Italics supplied.)

The Supreme Court affirmed this decision, stating at page 570:

"The extent to which an apportionment may take place between successive life tenants *must be governed by the facts in each case, and the conclusion of the court below on such facts will be adopted in this court unless there is an abuse of power.*" (Italics supplied.)

Finally, in Nirdlinger Estate (No. 1), 26 D. & C. 3, the question presented to this court was whether irregular cash dividends should be apportioned between successive life tenants. Both this court and the Supreme Court decided that the dividends, although irregular, were not extraordinary, and hence were not apportionable. However, the Supreme Court enunciated the following dicta, 327 Pa. 160, 170:

"Practical difficulties sometimes make apportionment of even an extraordinary cash dividend impossible, and for this reason it becomes a discretionary matter. We have held the question cannot arise where such dividend is declared after the termination of the trust; the rights of a deceased life tenant end on the termination of the trust: Neafie's Estate, supra. But the death of a life tenant does not act as an absolute

bar between successive life tenants to claim earnings where it is deemed equitable by the court: Neafie's Estate, supra."

In summary, this court has twice decided that items which are apportionable between income and principal under the Pennsylvania rule of apportionment shall not be apportioned among successive life tenants in the ordinary case: Graham's Estate, supra, and Waterhouse's Estate, supra. In a third case this court, without setting forth its reasons, permitted apportionment among succeeding life tenants *based solely upon the recommendation of an auditor:* Neafie's Estate, supra. In each of these cases the Supreme Court affirmed the action of this court, relying solely upon the finding of this court. Moreover, the Supreme Court has stated: "No inflexible rule can be laid down controlling the circumstances warranting equitable apportionment" (Nirdlinger Estate (No. 1), supra, 327 Pa. 160, 170), and "The extent to which an apportionment may take place between successive life tenants must be governed by the facts in each case, and the conclusion of the court below on such facts will be adopted in this court unless there is an abuse of power": Neafie's Estate, 325 Pa. 561, 570. Furthermore, the Supreme Court has refused to permit apportionment of extraordinary dividends: (1) Between testator and the first life tenant: Opperman's Estate (No. 1), 319 Pa. 455; and (2) between the last life tenant and the remaindermen after the death of the last life tenant: Neafie's Estate, 325 Pa. 561, 571. See Daily's Estate, 323 Pa. 42.

It is somewhat difficult to reconcile these holdings and statements of the Supreme Court. However, it would seem that the rule of law to be distilled therefrom is that apportionment among successive life tenants of items apportionable to income under the Pennsylvania rule of apportionment lies generally within

the broad discretion of the orphans' court. The exercise of that discretion will not be reversed except for "abuse of power". This was the rule of law when the Uniform Principal and Income Act was adopted in 1945.

In Cunningham Estate, 395 Pa. 1, 7, the Supreme Court indicated that henceforth the Pennsylvania rule of apportionment would "be restricted to only those situations judicially recognized as apportionable events or occasions prior to the legislative abrogation of the Rule . . .". To the same effect are Harvey Estate, 395 Pa. 62, and the recent decision in Pew Trust, 398 Pa. 523, 158 Atl. 552 (March 15, 1960). In Cunningham Estate, supra, at page 13, the majority of the court, speaking through Mr. Justice Benjamin R. Jones, noted the complexities and difficulties of administering the Pennsylvania rule of apportionment, viz:

"The Rule's application requires that the fiduciary, upon the happening of an apportionable event, determine the source from which distribution was made, whether such source consists of actual earnings or profits of the corporation earmarked solely for distribution to stockholders and how much of said earning or profits have accumulated since the creation of the trust.[19]

---

[Footnote] "[19] 'Any trustee who has to decide such a question must indeed be puzzled. If he tries to make a decision on his own account, he will have to spend a great deal of time and some trust money in getting the corporate history of the organization issuing the stock . . . and taking the advice of experts. He runs the danger of making a decision which may lay him open to liability at the hands of either L [life cestui] or R [remainderman]. In cases of importance, litigation to get the opinion of the court will be almost a certainty. No precedents will help in deciding such a question. Each case will be different. The gain to both life cestui and remainderman may well be eaten up in court costs and lawyers' fees.' 4 Bogert, Trusts and Trustees, §824, p. 273 (1948)."

"The fiduciary is required in each instance to make a full and complete study and investigation of the entire corporate background and to scrutinize all the corporate transactions at the cost of considerable time and trust money. Even if the fiduciary performs such a duty its eventual decision too often has to be made on an arbitrary and speculative basis. To include the present type of stock distributions within the orbit of apportionable events would add chaos to an already chaotic condition." [2]

Similarly, to require apportionment among successive life tenants would place additional burdens upon the trustees and create even more vexious complications and difficulties than apportionment between principal and income. The investigation into the finances of the corporation concerned, the arithmetic involved in computing the allocation among successive life tenants, the bookkeeping necessary to record the relevant data and the problems to be met in working out such aportionment calculations are intricate, costly and time-consuming. Rarely are they properly rewarding.

Moreover, many difficult problems arise in reopening estates of decedents long dead. Not the least of these are the heavy burden of State and Federal income, estate and inheritance taxes. Frequently, substantially the same parties receive the apportionable

---

[2] To the same effect are "Principal and Income-Apportionment-Stock Exchange Sale" by Philip A. Bregy, in April 1960, issue of Fiduciary Review; "Cunningham, Fosdick and Chaos-Ways out of Apportionment Dilemna" by Russell D. Niles, October 1959, issue of Trusts and Estates, page 924; "Mr. Nirdlinger, Meet the New Economy" by Philip C. Herr, II, 64 Dickinson Law Review 247 (1960); and "Legal, Tax and Accounting Aspects of Fiduciary Apportionment of Stock Proceeds: The Non-statutory Pennsylvania Rules" by Donald S. Cohan and Stephen T. Dean, 106 U. of Pa. Law Review 157 (1957).

items because the succeeding life tenants are issue or other close relatives of the deceased life tenant who would receive the apportionable items by devolution through the deceased life tenant's estate. To allocate a share of apportionment items to an estate long closed also has the cumulative effect of requiring the reopening of other estates also long closed. Paraphrasing the language of the Supreme Court in Cunningham Estate, supra, page 14, to require apportionment between presently living life tenants and estates of deceased life tenants "would add chaos to an already chaotic condition".

This is graphically illustrated in the instant case.

Testator was survived by his widow, Albertine Bamberger, and seven children, namely, Clara Wolfe, Maurice Bamberger, Harry Bamberger, Alyce B. (Kirschbaum) Kaye, William Bamberger, Emma B. Loeb and Nellie (Loeb) Stroock, all of whom are dead. Testator's widow died more than 40 years ago. His son, Maurice Bamberger, died in 1923, and one of his children, Louis, is now also deceased. Other of the life tenants have been dead for years. All of their estates have long been closed. To distribute the apportionable items as exceptants request would involve the opening of at least eight estates.

The statement of proposed distribution suggests that the distribution of the apportionable items be made to the "personal representatives when duly appointed and qualified" of the widow, Albertine Bamberger, the daughter, Alyce B. Kaye, and the son, William Bamberger, and states that "it was impossible to send notice to the Estates of Albertine Bamberger and William Bamberger, deceased life tenants, since there were no personal representatives in office".

Alyce B. Kaye, through whom exceptants in this case claim, died on March 25, 1939, without issue. The executors of her estate were Harold Loeb and Harry

M. Wessell, both now deceased. These executors were discharged many years ago. At the time the present account was filed, there was no personal representative of this estate, as appears from the above quoted language of the proposed statement of distribution filed with the court and the notice which was addressed to "Michael Cohen, Esq., Attorney for the Estate of Alyce B. Kaye, Deceased, 225 Broadway, New York 7, New York". However, during the course of this pending litigation, namely on October 22, 1958, Elsa L. Wessel was appointed administratrix, c. t. a., of the Estate of Alyce B. Kaye, deceased, by the surrogate of New York City.[3]

The apportionment calculations submitted by accountant at the hearing held November 22, 1958, cover 24 pages of the record and those filed at the hearing held February 4, 1960, consume 31 pages. These are the final figures; the record does not disclose the vast number of work sheets required to reach these results. As well stated by this court in Waterhouse's Estate, 16 D. & C. 73, 74: "This record presents a very complicated state of facts and figures. Few outside of trained accountants, can with facility properly apply the law to such a mass of figures".

It is apparent, however, even to the untrained eye, that the computations do not attempt to reveal precisely when the profits of the three corporations involved were accumulated. They appear to be computed over the entire period of each successive life tenant. They assume that the profits were accumulated gradually and evenly over the days, weeks, months and years involved, and presumably were realized, therefore, on a pro rata basis. However, in point of fact, as appears from the calculations, there were no profits during

---

[3] See certified copy of letters filed subsequent to the argument before the court en banc and annexed hereto.

the period from March 28, 1934, to March 25, 1939, and counsel frankly stated at the bar of the court that there were actually losses sustained during this period. The amount of these losses is not disclosed, nor are these losses deducted from the prior gains. But it is assumed, without proof, that the subsequent gains made *after* the death of Alyce B. Kaye cancel out the losses. There is no evidence that Alyce B. Kaye would have been entitled to any distribution if the apportionment-requiring event had occurred on March 24, 1939, the day before her death. One of counsel opposing the exceptions frankly stated at the bar of the court that he did not agree with the method of calculations used in this case, but that, since the difference involved was only $.22 to each of his three clients and a maximum of $90 to any single individual, he could see no point in requiring the preparation of costly recalculations based upon his theory.

It is to be observed further that no notice is taken of the well established rule that a shareholder is not entitled to corporation profits until official corporate action is taken: Graham's Estate, supra; Green v. Philadelphia Inquirer Company, 329 Pa. 169, 175. It is assumed that a life tenant, long deceased, has greater rights in corporate profits which are produced, but not declared in any form of dividend or distribution by the corporation, than does the ordinary stockholder.

The conclusion of the Supreme Court in Cunningham Estate, supra, at page 14, is apposite: "The practicalities of the situation, the historical restriction by our Court of the application of the rule to certain specific situations other than here present and the legislative enunciation of a public policy contra, the rule precludes its extension to cover the instant distribution". We accept this as a mandate from the Supreme

Court not to extend the area of the Pennsylvania rule of apportionment in any doubtful case.

We conclude, therefore, that items apportionable between principal and income under the Pennsylvania rule of apportionment will not be apportioned among the estates of successive life tenants except in the most unusual and compelling circumstances. The burden is upon the estate of a deceased life tenant to show that in a particular case such circumstances exist and that that estate is entitled to such apportionments. Exceptants in the instant case have not carried this burden.

Accordingly, the exceptions are dismissed and the adjudication, as modified by the two supplemental adjudications, is confirmed absolutely.