## O'Neill Trust

*Charles A. Woods, Jr.*, for surviving trustees.
*Otis S. Goode*, for exceptants.

BOYLE, P. J., November 1, 1960.—In the audit of the fourth account of testamentary trustees, after hearing testimony on the exceptions filed by the executors of Emily O'Neill Stebbins, a deceased life tenant entitled to two fifths of the income, the court entered a decree of distribution disposing of some of the questions raised and reserving the claims of the estate of said life tenant for apportionment of stock dividends of three corporations: National City Bank of New York, the First National Bank of Boston and the Insurance Company of North America.

At the time of the payment of each of the three stock dividends now to be apportioned, each corporation charged earnings with the par value of the stock distributed. The apportionment questions already set-

tled in the decree involved shares of Harbison-Walker, Inc., Sears Roebuck & Company, and Socony-Mobil Corporation wherein the rule of the New York Stock Exchange for listed stocks was followed and earnings were charged with the fair market value of the shares distributed. One of the questions to be decided in adjudicating the present claims for apportionment is whether the number of shares of a stock dividend distributable as income shall be limited to the dollar amount of earnings actually capitalized.

It is conceded that each of the stock dividends involved constitutes an apportionable event.

1. The Shares of National City Bank of New York.

The trustees purchased shares of stock of the National City Bank of New York as follows:

200 shares on January 3, 1949 .... $ 7,733.38
150 shares on March 1, 1950 ....... 7,194.74
50 shares on May 25, 1951 ........ 2,000.00

Total 400 shares    Total Purchase Price $16,928.12

On February 16, 1953, a stock dividend of 16.67 shares was declared. To support the dividend, the bank capitalized earnings in the amount of the par value of the stock distributed.

In Harvey Estate, 395 Pa. 62, 67, 68, the Supreme Court restated the Pennsylvania rule of apportionment and the formula used to apply the rule in the following language:

". . . In substance, the Rule provides that, upon the happening of an apportionable event, a life tenant is entitled to receive profits and earnings of the corporation accumulated and undistributed since the settlor's death or the trust's acquisition of the stock, so long as the intact value of the trust principal to be preserved for the remainderman is not impaired: Earp's Appeal, 28 Pa. 368. The formula used to apply this Rule may be described briefly in the following steps: (1) the in-

tact value of the stock held by the trustee on which the stock distribution was made must be determined;[4] (2) the intact value must be divided by a value per share assigned at the time of the apportionable event to determine the number of shares which must be retained to protect the intact value;[5] (3) if intact value is protected, and additional shares remain, the dollar amount to which the life tenant is entitled must be determined, that is the amount of earnings accumulated and undistributed by the corporation since the acquisition of the stock by the trust or the death of the settlor; (4) the value per share to be divided into this amount must then be ascertained to determine the number of shares to which the life tenant is entitled; (5) any shares remaining after this calculation are retained in principal. It is readily apparent from an examination of the Rule that its purported equitable propensities are governed entirely by the values that are assigned to determine intact value, the value per share used to preserve intact value, and the value per share used to distribute the accumulated earnings to the life tenant."

The decided cases have not restricted the life tenant to earnings actually capitalized. The courts have looked to the protection of intact value, as adjusted by capital increases and losses, as the first restriction and then to the ascertainment of whether the stock dividend represented earnings accruing from the time of the acquisition of the stock or the settlor's death and undistributed to the date of the dividend: Arrott

---

"[4] The purpose of this determination is clear: if the aggregate value of the shares held by the trustee after the stock distribution is less than the intact value, no apportionment can be made to income."

"[5] The parties agree that this number should never be less than the original number of shares held by the trust."

Estate, 383 Pa. 228, 230-32; Steele Estate, 377 Pa. 250, 253; Barnes' Estate, 338 Pa. 555, 559-60; Hostetter's Trust, 319 Pa. 572, 575; Waterhouse's Estate, 308 Pa. 422, 430; 106 U. of Pa. L. Rev. 157, 159. See Trimble Estate, 106 Pitts. L. J. 441, 467-76.

The auditing judge holds that the formula of apportionment as defined in Harvey Estate, 395 Pa. 62, 67, 68, does not intend or require that the number of shares to be apportioned to the life tenant be restricted by the amount of earnings *actually* capitalized to support the stock dividend. If such a restriction were applied, it would result in the inequity which the Pennsylvania rule of apportionment is intended to prevent. There is no reference in the apportionment formula to earnings actually capitalized nor to any ratio of earnings to total par value. It has been held that an income beneficiary may share in earnings which are not capitalized as where rights to subscribe to stock are issued: Hostetter's Trust, supra.

As appears above, the cost of the 400 shares of stock of the National City Bank of New York was $16,-928.12. Cost price is the intact value required to be preserved for the remaindermen when the shares are purchased by the trustee after the settlor's death: Arrott Estate, supra, 233, 236.

The court must next determine whether an award of the stock dividend to the income beneficiaries would result in an impairment of the intact value which we are required to preserve for the remaindermen. With what value at the time of the declaration of the stock dividend do we compare intact value in order to provide the answer to this question? Is it market value as the exceptant suggests (see 106 U. of Pa. L. Rev. 161, 212) or is it the book value of the shares at the dividend date which should apply? In resolving this question, it has been the practice to use the book value of

the shares at the dividend date: Bullitt's Estate, 308 Pa. 413, 420, 421.

It is conceded that the book value of the shares at dividend date is $51.61 per share. When this value per share is divided into the cost intact value of $16,-928.12, we ascertain that 328 shares of the stock are needed to preserve the intact value. All the dividend shares could be awarded to income without impairment of corpus.

The next step is to determine the dollar amount to which the life tenants are entitled, i.e., the amount of earnings accumulated and undistributed by the corporation since the acquisition of the stock by the trust. When the total number of 416.67 shares involved is multiplied by the book value of $51.61 per share on the dividend date, the product is a total book value of $21,504.84. The original book value, $48.12 per share, is $19,248.59, plus an agreed capital gain adjustment of $2.77 per share or $1,111.11. This results in a total adjusted original book value of $20,352.70. The subtraction of the adjusted original book value of $20,-352.70 from the book value, $21,504.84, on the dividend date results in a remainder of $1,152.14, which is the amount by which earnings have increased the value of the trust.

When the said sum of $1,152.14 is divided by the book value per share, $51.61, at dividend date, it appears that 22 shares equal retained earnings. It follows that the 16 shares received as a stock dividend, plus $35.71 in cash received for the fractional share, should be awarded to income.

2. Shares of First National Bank of Boston.

The law and method of calculation set forth supra in this opinion to arrive at an equitable apportionment of the dividend shares of National City Bank of New York are the same which govern the apportionment of the extraordinary stock dividend of 7.69 shares

received by the trust from the First National Bank of Boston on the 100 shares acquired by the trust after the settlor's death. In this instance, also, a transfer was made from earned surplus to capital stock account of an amount equal to the par value of the dividend shares.

On March 7, 1952, the trustees purchased 100 shares for $4,955.93. On November 9, 1953, 7.69 shares were received as a stock dividend.

The calculations reveal the following:

$$\frac{\text{Cost intact value} \quad \$4,955.93}{\text{Divided by book value per share on dividend date} \quad 45.83} = 108.1$$

108.1 shares are required to maintain the intact value. The stock dividend of 7.69 shares should be decreed as corpus. None of the shares is apportionable to income.

3. Shares of the Insurance Company of North America.

The trustees purchased 50 shares of stock on February 2, 1949, for the cost price of $5,518.08 which is their intact value. Due to stock splits and a dividend awarded to corpus by a prior court decree, the trustees held, on July 27, 1951, 120 shares in place of the original 50, the 120 shares having a total intact value of $5,-518.08 or $45.984 per share.

On December 31, 1953, the trust received 24 shares as an extraordinary stock dividend, earnings being charged with the par value of the dividend stock. On the date of the dividend, the book value of the 144 shares was $60.26836 per share or a total of $8,-678.64. Dividing the intact value of the shares by the book value per share on the dividend date results in a quotient of 92 shares, the number necessary to preserve the intact value of the original investment of the trust. If all the 24 shares in the stock dividend

were awarded to income at the book value on the dividend date, there would be no impairment of intact value.

In Harvey Estate, supra, 71-73, it was held that the unrealized, enhanced value of assets in which profits and earnings of the corporations have been invested should be included in determining the book value of the shares on the dividend date, provided the increased value is readily determinable from a recognized market price. It was also held that this increase in value should be excluded from book value in determining the amount of retained earnings accumulated and undistributed by the corporation since the acquisition of the stock by the trust and thus should be excluded from book value in determining the amount of "earnings" to which the life tenant is entitled: Harvey Estate, supra, page 71. The application of this formula to the facts in the case at bar results in a quotient of more shares than the 24 involved in the stock dividend as representing retained earnings. All said 24 shares are allocable to income.

The trustees' account avers that the 24 shares received as a dividend on December 31, 1953, were sold as part of a total of 44 shares on March 3, 1955. The sale price received for these 44 shares was $4,818.38, or $110 per share less costs of sale. The court has held above that the 24 shares of dividend stock belong to the income beneficiaries. The proceeds of the sale of the 24 shares will be awarded as income to the life beneficiaries, of whom the exceptant's estate is one.

The remaining 20 shares which were sold on March 3, 1955, were part of the corpus of the trust estate. The proceeds of the sale should be apportioned between principal and income in accordance with the formula established in Harvey Estate, supra. It appears that the intact value of the 20 shares is $45.98 per share, or $919.60. The net proceeds of sale were $2,190.17,

leaving a remainder of $1,270.57 which might be apportioned to income without impairment of intact value. In the retained earnings calculation, the book value at acquisition date is $35.31 per share, or $706.20. The book value at date of sale was $83.14 per share, or $1,662.80. When the book value at the date of acquisition is subtracted from the book value at the date of sale, there is a remainder of retained earnings in the sum of $956.60 which is apportionable to income.

The intact value of the 20 shares of principal stock which were sold was $45.98 per share, or a total of $919.68. The sale of these 20 shares modifies the original intact value of $5,518.08 by this amount, leaving an adjusted intact value of $4,598.40.

On May 18, 1956, 20 shares of stock were received by the trustees as a stock dividend, the record date being April 13, 1956. The book value per share on the record date was $80.31848, including reserves. When the book value per share is divided into the intact value of 100 shares, $4,598.40, the quotient is 56 shares needed to preserve the adjusted intact value. This was a 20 percent stock dividend so that the portion attributable to the corpus of the estate, 100 shares, is 20 shares which may be awarded to income without impairment of intact value.

In the calculation of retained earnings, to determine the number of shares to be awarded to income, the original book value of 100 shares, excluding reserves, has been calculated at $28.271 per share, or $2,827.10. The book value of the 120 shares, excluding reserves, on the dividend record date, April 13, 1956, is $32.5390 per share, or $3,904.68. The difference between these totals results in a retained earnings figure of $1,077.58. This latter figure divided by the book value, including reserves, on the record date, viz., $80.31848 per share, results in a quotient of 10.3040 shares to be

apportioned to income and 9.696 shares to be awarded back to principal.

The proceeds of the sale of the 24 share stock dividend of December 31, 1953, will be awarded to income.

The proceeds of the sale of the 20 shares of stock from corpus will be apportioned, $956.60 to income and $1,233.57 to principal.

The 20 share stock dividend of April 13, 1956, will be apportioned, 10.304 shares to income and 9.696 shares to principal.

A decree will be entered in accord with this opinion.