## Biddle Estate

*Morris Fussel* and *William White, Jr.*, for accountant.

*A. Sidney Johnson, Jr., Rodney T. Bonsall, M. Stevenson Easby, Allen S. Olmstead, 2nd, John R. Suria, John Kennedy Ewing, Robert E. Porter* and *George B. Clothier*, for claimants.

VAN RODEN, P. J., February 14, 1961.—Decedent died June 5, 1933, leaving a will dated February 10,

1931, and a codicil dated March 17, 1931, which were probated in this county on June 19, 1933. The will established a testamentary trust of his residuary estate for the payment of income for life to decedent's widow, Anna Rutherfurd Biddle, who died January 3, 1956, with the provision that on her death the corpus was "to be placed in trust, and kept in that trust," and the income therefrom was to be paid to the trustees of Jefferson Medical College for purposes mentioned therein.

The account of the trustee, filed by reason of the death of the life tenant, was audited in this court by written adjudication dated June 11, 1956. Thereafter, the executors of the estate of deceased life tenant filed a timely petition with this court for the opening of said adjudication, and no answer being filed, the adjudication was duly opened.

The purpose in opening the adjudication is to enable the court to consider the claim of the estate of the now deceased life tenant for apportionment of gains resulting from stock dividends, capital gains and the proceeds of the sale of stock subscription rights. The total claim is in the amount of $5,399.52. It is conceded by stipulation that the life tenant's estate is entitled to $1,642.46, representing the share apportionable to income of gains resulting from transactions which occurred prior to the life tenant's death.

The dispute is with respect to the remaining balance of the claim of the life tenant's estate, or $3,757.06, representing capital gains from sales of stock made during 1956, 1957 and 1958, after the death of the life tenant.

The question submitted for determination by this court is whether that portion of the corporate earnings which accrued during the lifetime of the income beneficiary can now be awarded to her estate, even though

the apportionable *events,* namely, the sales, took place subsequent to her death. Although it was indicated in Graham's Estate, 296 Pa. 436 (1929), and Waterhouse's Estate, 308 Pa. 422 (1932), that capital gains are not ordinarily apportionable between successive life tenants, nevertheless, in Neafie's Estate, 325 Pa. 561 (1937), the Supreme Court allowed such apportionment between the successive life tenants, saying (at page 570) :

"To see earnings pyramided for years in surplus and the stock market value increase until the last living or a favored life tenant appears, then to liquidate the stock and give to that life tenant the earnings for these years reflected in sale price and deny them to the estates of the intermediate life tenant during which the earnings accrued, can scarcely be regarded as fair. Indeed the reason underlying the Pennsylvania rule is applicable to this very situation. The extent to which an apportionment may take place between successive life tenants must be governed by the facts in each case, and the conclusion of the court below on such facts will be adopted in this court unless there is an abuse of power."

After full and careful review of the decided cases and various legal treatises, this court is of the opinion that the trust under this decedent's will, insofar as the Pennsylvania Rule of Apportionment is applicable, may be considered as terminated upon the death of the sole life tenant on January 3, 1956, insofar as conflicting rights of income and principal may be involved, and thereafter it was a perpetual charitable trust. Furthermore, even if it should be held that the life tenant and Jefferson Medical College were successive income beneficiaries of an apportionable trust, the allocation of apportionments between successive income beneficiaries is not permitted under Pennsylvania law under these circumstances.

738

The law of Pennsylvania restricts apportionment between life tenant and remainderman to the period of the particular trust. In other words, no apportionable event can occur after the trust principal has vested, in possession and enjoyment, in the remainderman.

In Neafie's Estate, supra, it was stated (at pages 570-71):

"Successive life tenants can only participate when there is a sale or liquidation of the stock during the life of the trust. When the shares released of the trust pass to the remaindermen the trust estate is ended, and the stock is freed from any claim by the life tenants."

See also, to the same effect: Given's Estate, 323 Pa. 456, 463 (1936); Nirdlinger's Estate (No. 1), 327 Pa. 160, 170 (1937), and Green v. Philadelphia Inquirer Company, 329 Pa. 169, 176 (1938).

The only pertinent distinction between the present case and those cited is that here the remainder is to a perpetual charitable trust, rather than outright to an individual or corporate remainderman. The fund continues in the hands of the corporate trustee for the payment of the income to Jefferson Medical College perpetually. Jefferson Medical College is in reality remainderman.

The only logical conclusion is that, for all purposes of the Pennsylvania apportionment rule, this trust came to an end when the sole life tenant died. Jefferson Medical College cannot realistically be treated as a succeeding "life tenant," nor can its interest be treated as a succeeding "life estate." The apportionment rule was developed to balance the interests of life tenants, on the one hand, and remaindermen on the other, while the former are entitled to the income for life, and the latter are out of possession by reason of such life tenancy. When this trust status ends, the

potential apportionment claims end with it. It can make no difference whether the charitable remainderman receives the income in perpetuity from a trust company, as here, or from its own endowment fund, as would be true in the case of an outright legacy allocated to endowment. In either event the corpus of the fund has reached its permanent owner, who takes it "freed from any claim by the life tenants."

This distinction between ordinary trusts for life tenant and remainderman, within the period of the rule against perpetuities, on the one hand, and perpetual charitable trusts on the other hand, has in similar connections been commented upon by the courts. Thus, in Trexler's Estate, 32 D. & C. 427, involving the amortization of bond premiums in a charitable trust, the court said (page 430):

"Here the beneficiaries and theoretical remaindermen are one. The beneficiaries are the charities and the City of Allentown, and the trust is to be carried on perpetually."

This court, therefore, holds that all rights of the life tenant to apportionments under the Pennsylvania rule ceased at her death, except those arising out of apportionable events which occurred during her lifetime, just as though the principal had been bequeathed under the will outright to Jefferson Medical College.

A similar conclusion was reached by the Orphans' Court of Philadelphia County in Bamberger Trust, 20 D. & C. 2d 394. In a long and carefully reasoned opinion, after a full analysis of the opinions of the Pennsylvania Supreme Court in Neafie's Estate, 325 Pa. 561 (1937), and Nirdlinger's Estate (No. 1), 327 Pa. 160 (1937), and many other cases, Judge Lefever described the situation and defined the law with clarity, and his analysis of the law is sound and persuasive.

The case presently before this court neither requires nor warrants an exception to the general rule that

there is no allocation or apportionments between successive life tenants.

Accordingly, the court enters the following

## Decree

And now, February 14, 1961, the adjudication of this court filed in the trust estate under the will of Clement Biddle, deceased, dated June 11, 1956, having been opened by an order of this court dated December 22, 1959, pursuant to a citation duly executed for that purpose; it is hereby ordered, adjudged and decreed, as follows:

1. The said adjudication be and the same is hereby amended by inserting therein the following two additional paragraphs:

a. The claim of M. Stevenson Easby and the Provident Tradesmens Bank and Trust Company, executors in the estate of Anna Rutherfurd Biddle, deceased, for an apportionment claim in the sum of $1,642.46 involving capital gains, stock dividends, stock exchanges and the proceeds of the sale of stock subscription rights, against the principal of the trust created under the terms of the will of the present decedent, is hereby sustained to the extent of $1,642.46, and said sum is hereby awarded to claimants; and the surviving trustee under the will of Clement Biddle, deceased, is directed to pay said sum to said claimants, and the accountant is hereby granted additional credit therefor.

b. The claim of M. Stevenson Easby and the Provident Tradesmens Bank and Trust Company, executors under the will of Anna Rutherfurd Biddle, deceased, in the sum of $3,757.06, involving capital gains, stock dividends, stock exchanges and the proceeds of the sale of stock subscription rights against the principal of the trust created by the terms of the will of Clement Biddle, deceased, relating to apportionable events occurring after the death of the life tenant, is hereby dismissed.

2. As so amended, the adjudication of June 11, 1956, is in all respects ratified and confirmed absolutely and remains in full force and effect.

3. The parties shall bear their respective costs.

4. An exception is granted to each of the parties in interest.